[No. 338-2.    Division Two.    November 18, 1971.]

NORA E. STEPHEN, *Appellant,* v. LOUIS H. GALLION *et al., Respondents.*

*Thomas J. Gagliardi* (of *Gagliardi & Gagliardi*), for appellant.

*A. Eugene Hammermaster* (of *Hammermaster, Robbins & Boettcher*), for respondents.

PETRIE, C.J.—This case presents another variation of a perennial theme: as between two parties (one of whom is usually a wife), who is entitled to the proceeds of a life insurance policy?

The agreed statement of facts reveals that Jack and Nora Stephen were married in 1944 and divorced on December 5, 1968. Jack died slightly more than a month later, on January 7, 1969. Since 1953 Jack had been employed by the Boeing Company and had been the named insured under a group life insurance policy issued by the Aetna Life Insurance Company and owned by the Boeing Company, the policy holder. The policy had no cash surrender value, and no survivor benefits were payable under the policy at the time the divorce decree was entered. During the course of Jack's employment, the Boeing Company paid the entire premium on a monthly basis. Jack paid no part of the premium. The Boeing Company paid at least one monthly premium on the policy after the date of divorce and before Jack's death.

The decree of divorce neither disposed of nor mentioned the group life insurance policy, but did order that any and all property thereafter acquired by either party thereto would be his or her separate property. Prior to the divorce Nora had been the named beneficiary. Before his death but after the divorce, Jack had changed the beneficiary designation from Nora to his minor daughter, Jackie M. Stephen.

We are not advised of the precise manner in which this

case was presented to the trial court, but it appears that the insurance company deposited the insurance proceeds (death benefit) with the National Bank of Washington, Tacoma, as guardian of the estate of Jackie M. Stephen, and Nora then brought this action seeking one-half of the proceeds. After trial to the court, Nora's complaint against the minor's guardian was dismissed with prejudice. Nora appealed to this court.

This jurisdiction is now firmly committed to the proposition that a potential right to receive proceeds of a life insurance policy constitutes property and not a mere expectancy and, if the premiums are paid with community funds, the insurance proceeds are community property at least so long as a beneficiary has not been irrevocably designated. *Occidental Life Ins. Co. v. Powers,* 192 Wash. 475, 74 P.2d 27, 114 A.L.R. 531 (1937); *In re Estate of Towey,* 22 Wn.2d 212, 155 P.2d 273 (1945). Even though there is no accumulating cash value, when the premiums on a group policy insuring against death or disability under term insurance are paid monthly by community assets, the proceeds of the policy constitute community property categorized as an inchoate interest acquired month by month. *Small v. Bartyzel,* 27 Wn.2d 176, 177 P.2d 391 (1947); *Chase v. Chase,* 74 Wn.2d 253, 444 P.2d 145 (1968).

In the present case, the guardian for Jackie M. Stephen contends that no portion of the premiums were paid by community assets, but rather, were paid exclusively by the employer. This is a distinction without a difference. A retirement pension under a noncontributory, employer-financed pension plan is not a gratuity, but is pay withheld, and constitutes delayed compensation for services rendered. *Jacoby v. Grays Harbor Chair & Mfg. Co.,* 77 Wn.2d 911, 468 P.2d 666 (1970). Just as the pension benefits do not constitute a gratuity, so also the premiums paid or payable by the employer to finance the plan are not gratuities. They are paid by the employer as an essential part of employment based upon the continuing employment of each and every employee covered under the plan during any given

monthly period. Although no portion of any given premium passes through the pockets of any given employee, and thus he receives some tax advantage, nevertheless it does constitute something produced by such employee by his toil or talent. The benefit to the employee is part of the consideration for his services. To that extent, if he is married, it is earned by and belongs to the community.

For purposes of determining the legal status of policy proceeds, we see no logical reason to distinguish between an insurance plan which provides for a retirement or pension benefit and one which provides for a death or disability benefit. Thus, we conclude that the property rights, which inure under a group life policy in which premiums are paid exclusively by the employer, are no different from the property rights that inure under a plan in which the premiums are paid by salary deductions from the named insured's paycheck.

■ It follows that at the time of entry of the decree of divorce, the accumulated inchoate interest in the insurance proceeds, which the community had by that time acquired, constituted a community asset which should have been disposed of by the divorce decree. Such decree not having disposed of such property, it became equally the property of each of the parties to the divorce as tenants in common. *Chase v. Chase, supra; Northwestern Life Ins. Co. v. Perrigo*, 47 Wn.2d 291, 287 P.2d 334 (1955).

In *Perrigo* the court declared at page 295:

The effect of the dissolution of the marital community, and the resulting change of the policy into property held by the parties as tenants in common, was to free the deceased husband from the rule[1] of *Occidental Life Ins. Co. v. Powers, supra,* and make it possible for him to

---

[1]The rule of the *Powers* case here spoken of, as modified by *In re Estate of Towey*, 22 Wn.2d 212, 155 P.2d 273 (1945), is that the husband, as statutory agent of the marital community, may not, without the consent of his wife, designate other than the wife as a beneficiary of a life insurance policy and thereby make a gift of community property against the consent of his wife; except that he may make testamentary disposition of his one-half interest by designating his estate as the beneficiary.

dispose of his one-half interest in the policy in any way he saw fit.

It is apparent in the brief period of his life between his divorce and death, Jack Stephen did dispose of *his* one-half portion in the accumulated inchoate interest to the proceeds by designating his minor daughter as the beneficiary under the policy. Jack having died so shortly after the divorce, one-half of the total proceeds of the policy vested in and therefore became payable to Jackie M. Stephen. Nora's otherwise continuing interest *as a named beneficiary* was extinguished by Jack's exercise of his power to change the beneficiary. The one extra premium paid after the divorce did not add anything substantial to Jackie's interest.

As to the other one-half accumulated inchoate interest in the proceeds, however, it is clear that it became the separate property of Nora Stephen by operation of law upon the entry of the decree of divorce as a result of the failure of that decree to otherwise dispose of the property interest in the proceeds of the policy. She did not "acquire" this interest after divorce; she merely retained the interest which she previously had prior to the divorce, the only difference being that she no longer owned the undivided, inchoate one-half interest by reason of her position in the marital community, but rather as a tenant in common with her former husband. Because such interest was her separate property, Jack no longer had any authority, unilaterally, to deprive her of the potential benefits payable so long as the policy remained in force. He had been divested of all interest in the "property" awarded to Nora. *United Benefit Life Ins. Co. v. Price,* 46 Wn.2d 587, 283 P.2d 119 (1955). Upon Jack's death, only a month after the divorce, one-half of the proceeds vested in and should have been paid to Nora Stephen.

Reversed and remanded.

PEARSON and ARMSTRONG, JJ., concur.

Petition for rehearing denied January 3, 1972.

Review denied by Supreme Court February 9, 1972.