[No. 5175–3–II.   Division Two.   February 1, 1983.]

KAREN D. CROZIER, *Respondent,* v. THE EQUITABLE
LIFE ASSURANCE SOCIETY OF THE UNITED STATES,
*Respondent,* JACKLYN A. CROZIER,
*as Guardian, Appellant.*

*Robert Briggs,* for appellant.

*A'Lan S. Hutchinson,* for respondent Crozier.

WORSWICK, A.C.J.—Jacklyn Crozier appeals a judgment which allocated $17,500 of life insurance proceeds to the children of Jacklyn and decedent Scott Crozier, and $22,500 to Karen Crozier, decedent's widow. Jacklyn contends that the children should receive the entire $40,000 benefit; Karen cross–appeals contending she should receive it all. We hold that the children are entitled to all of the proceeds.

Jacklyn and Scott were married in 1968 and divorced in December 1972. Three children were born of this marriage. None of the children had been emancipated or had attained majority at the time of trial. Scott was a salaried employee of Weyerhaeuser at the time of the divorce and at his death. The company provided group term life insurance for salaried employees and paid the entire premium. The death benefit was coordinated with salary and increased as the employee's salary increased.

Jacklyn and Scott made a property settlement agreement which was approved by the court. It provided, as did the decree, that the policy would be awarded to Scott "provided, however, that he keep the same in full force and effect and maintain the minor children as irrevocable beneficiaries during their minority." Jacklyn had known only

that there was a policy. At trial, she was unable to remember if she had known the amount of the death benefit. It was, in fact, $17,500 at the time of the divorce.

Karen and Scott were married in June 1977. At that time, the death benefit had increased, because of salary increases, to $32,500. Scott made Karen the beneficiary; he died in December 1978. By that time the benefit had increased to $40,000.

Jacklyn brought this action against the insurance company which then joined Karen as a party and, essentially, converted the proceeding into an interpleader leaving only Jacklyn and Karen as contestants.

Karen contends that, because the policy was the property of Scott, he had the right to name her as the beneficiary, that the policy was community property and she thereby acquired an interest in it and that, because the children's interest is limited to security for child support, they should get nothing. This is so, she asserts, because they receive social security benefits greater than the support obligation Scott had at the time of his death. Jacklyn simply contends that the children were beneficiaries of the policy, not simply a portion of the variable proceeds, and that they are entitled to all of the proceeds because Scott had irrevocably agreed that they were before Karen entered the picture. We agree with Jacklyn.

■ Life insurance policies paid for with community funds are community property, although the insured member of the community has the right freely to designate beneficiaries as to that member's one–half community interest. *Francis v. Francis,* 89 Wn.2d 511, 573 P.2d 369 (1978). Karen argues that it follows that the community created by a second marriage has an interest in policies acquired before that marriage because of premiums paid by the new community. This is logical as far as it goes. However, our cases have consistently recognized that the right to deal freely with such a policy may be limited where there has been an irrevocable designation of beneficiaries. *See Francis,* 89 Wn.2d at 514; *Kirk v. Continental Life & Accident*

*Co.,* 85 Wn.2d 85, 530 P.2d 643 (1975); *Stephen v. Gallion,* 5 Wn. App. 747, 749, 491 P.2d 238 (1971). This general proposition was given specific force in *Porter v. MacLeod,* 15 Wn. App. 650, 553 P.2d 117 (1976). In *Porter* we held that the new community had no interest in the policy, its premium payments notwithstanding, because those payments were compelled, not voluntary, *Porter,* 15 Wn. App. at 654, and were used to pay an antenuptial debt brought into the marriage by an "encumbered husband." *See also* RCW 26.16.200. The principle announced in *Porter* disposes completely of Karen's arguments both as to Scott's ownership and the interest of the new community. The premiums having been paid entirely by an increment to Scott's salary, and maintenance of the policy by Scott having been compelled by the decree, Scott's ownership was encumbered and the community of Karen and Scott acquired no interest which could defeat the irrevocable rights of the children.

We summarily reject Karen's contention that the children should receive nothing because the insurance was merely security for child support and social security benefits amply cover Scott's obligation in this regard. While it is true that insurance provisions of this kind are considered related to and security for the support obligation, *Sutherland v. Sutherland,* 77 Wn.2d 6, 459 P.2d 397 (1969); *In re Marriage of Donovan,* 25 Wn. App. 691, 612 P.2d 387 (1980); *In re Estate of Reynolds,* 17 Wn. App. 472, 563 P.2d 1311 (1977), it does not follow that the proceeds are not payable to the children because they also receive other benefits. Karen has cited no authority supporting this contention and we have found none.[1] This is hardly surprising. Presumably Jacklyn and Scott, as well as the judge who signed the decree of dissolution, were aware that social

---

[1]Indeed, our courts have held that a disabled spouse cannot offset social security benefits received by his children, because of the disability, against child support without first obtaining a modification of the decree. *Chase v. Chase,* 74 Wn.2d 253, 444 P.2d 145 (1968); *Hepton v. Hepton,* 25 Wn. App. 229, 605 P.2d 1288 (1980).

security benefits would be available if Scott died. Nevertheless, they provided for insurance, too. We hold that, absent a demonstrated contrary intent of the parties, insurance proceeds payable pursuant to a decree of dissolution are not to be diminished because there may be a collateral source of support.

■ The trial judge apparently allocated the proceeds in the belief that the parties were dealing with a fixed amount of death benefits at the time of the decree and that later increases constituted after acquired insurance not contemplated by the decree. No Washington cases have yet dealt with the issue presented by this type of policy.[2] We believe the proper approach requires us to view the property settlement agreement, and the decree confirming it, as we would a contract. *See Lock v. Lock,* 8 Ariz. App. 138, 444 P.2d 163 (1968). Using this approach we look first to the language of the "contract"; if it is clear, we need go no further. If it is not, we examine whatever evidence is available to determine the intent of the parties.[3]

■ Here, the language of the agreement provided that

---

[2]Cases in other jurisdictions construing decretal provisions in general are divided and limited to their facts. *E.g., Larson v. Larson,* 226 Ga. 209, 173 S.E.2d 700 (1970): Property settlement agreement provided husband should keep "at least $15,000" in force with wife as beneficiary. *Held,* wife not entitled to anything where employer canceled the policy identified in the decree; *Reeves v. Reeves,* 236 Ga. 209, 223 S.E.2d 112 (1976): children to be beneficiaries of "the life insurance policies now in effect . . ." *Held,* children limited to amount of proceeds at time of decree, citing without discussion *White v. Michigan Life Ins. Co.,* 43 Mich. App. 653, 204 N.W.2d 772 (1972); *McKissick v. McKissick,* 93 Nev. 139, 560 P.2d 1366 (1977): decree referred to policy which did not exist. *Held,* later acquired policy, including increased accidental death benefits, payable for children's benefit. *See also Nielsen v. Nielsen,* 535 P.2d 1239 (Utah 1975); *Odom v. Prudential Ins. Co. of Am.,* 173 Or. 435, 145 P.2d 480 (1944).

[3]This was done in the frequently cited, and frequently misapplied, case of *White v. Michigan Life Ins. Co.,* 43 Mich. App. 653, 204 N.W.2d 772 (1972), in which the court, having found the language of a decree ambiguous, examined the evidence in the divorce trial thus enabling it to determine exactly what the parties intended. Several cases cite *White* for the flat proposition that the irrevocable beneficiaries are only entitled to the amount of death benefit at the time of the decree, failing to note that the *White* court reached this result only after determining the intent of the parties.

the children were to be beneficiaries of the policy, not of any specified dollar amount. The policy was identified specifically as the Weyerhaeuser group policy; it was the same policy at Scott's death as it was at the time of the divorce. Nothing in the record before us suggests that the parties intended anything other than what they said in their agreement: the children were to be beneficiaries of the policy. Ordinarily the beneficiary of a policy is entitled to the entire proceeds. 2 J. Appleman, *Insurance* § 771 (1966). We have found only two cases dealing with the exact kind of policy involved here. They both hold, as we now hold, that the beneficiaries (in this case the irrevocable beneficiaries) of the policy, when it is of this type,[4] take the entire proceeds. *Newton v. Newton,* 472 P.2d 718 (Colo. Ct. App. 1970); *Carter v. Carter,* 202 Va. 892, 121 S.E.2d 482 (1961).

Reversed and remanded with directions to enter judgment in accordance with this opinion.

PETRIE and REED, JJ., concur.

Reconsideration denied March 8, 1983.

Review denied by Supreme Court May 10, 1983.

---

[4]An employer provided and funded group policy with death benefits coordinated with salary.