[No. 50317–6.   En Banc.   October 4, 1984.]

AETNA LIFE INSURANCE COMPANY, *Plaintiff,* v. SHARON
ANN WADSWORTH, *Petitioner,* JOAN CAROL
WADSWORTH, *Respondent.*

*William J. Carlson,* for petitioner.

*Kurt Lichtenberg* and *Keller, Rohrback, Waldo, Hiscock, Butterworth & Fardal,* for respondent.

*Harry M. Cross* on behalf of the University of Washington Law School, amicus curiae.

DORE, J.—This interpleader action involves a dispute between decedent Lawrence Wadsworth's first wife and his wife at the time of his death over the proceeds of a group term life insurance policy. The dissolution decree between the decedent and his first wife purported to transfer all of her interests in all life insurance policies on the decedent's life to him. The first wife, however, remained the named beneficiary of the term insurance at the time of his death.

This action raises two issues. First, what is the proper characterization under our community property law of the group term life insurance policy? We hold that the character should be determined by the identity of funds used to pay for the most recent term.

Second, does a dissolution decree purporting to divest a spouse of her interests in all life insurance policies also divest her of all interest as a named beneficiary? We hold that it does not. We hold further that the former spouse named beneficiary in the policy is entitled to the proceeds unless (1) a dissolution decree specifically states that the

former spouse is divested of his or her expectancy as named beneficiary *and* (2) the policy owner formally executes this previously stated intention to change the beneficiary within a reasonable time (but no longer than 1 year) after dissolution. After this reasonable time period, assuming no community property rights are invaded, the beneficiary named in the insurance policy is entitled to the proceeds despite a statement in the dissolution decree indicating a contrary intent.

## FACTS

Joan and Lawrence Wadsworth were married in 1949. In 1952, Lawrence commenced work for the Boeing Company. In 1963, Aetna Life Insurance Company issued a group term life insurance policy covering Boeing employees, including Lawrence. The policy has no cash surrender value and each premium is paid in full on a monthly basis as a benefit of employment by the Boeing Company. Lawrence designated Joan as beneficiary.

Joan and Lawrence were divorced on August 3, 1978. The dissolution decree incorporated a separation contract in which Joan conveyed to Lawrence "as his sole and separate property, free and clear of any right, title, or interest on her part . . . [a]ll life insurance policies" insuring his life. Lawrence Wadsworth married Sharon Wadsworth on the same day. Lawrence never changed the designation of Joan as beneficiary of the group policy.

Lawrence Wadsworth died intestate on January 10, 1981. Sharon, as surviving spouse and administratrix of his estate, claimed the proceeds of the group policy. Pursuant to the terms of the policy, Aetna commenced an interpleader action to determine whether Sharon or Joan should receive the policy proceeds. Joan moved for partial summary judgment, arguing that she was entitled to one–half of the policy proceeds as named beneficiary. Sharon brought a cross motion, claiming all of the proceeds.

The trial court denied Joan's motion and granted Sharon's motion for summary judgment, and awarded her

the policy proceeds.

Joan appealed. The Court of Appeals found that the dissolution decree divested Joan of any interest she had in the group policy, including her right to be named as beneficiary. It further held that the dissolution of Joan and Lawrence's marriage converted the group policy into Lawrence's separate property. Thereafter, ownership of the policy or its proceeds was both separate and community property in proportion to the percentage of the total premiums paid. Thus, the Court of Appeals held that Sharon obtained a community property interest in only that portion of the proceeds attributable to the premiums paid with community funds after her marriage to Lawrence. It reversed and remanded to the trial court for resolution of two factual issues: (1) did Lawrence intend Joan to be the beneficiary of the policy, and (2) if so, what portion of the policy proceeds are attributable to premiums paid by funds of the marital community of Lawrence and Sharon. *Aetna Life Ins. Co. v. Wadsworth,* 36 Wn. App. 365, 675 P.2d 604 (1984).

## JUDICIAL HISTORY

Application of community property principles to life insurance policies in Washington has its roots in *Occidental Life Ins. Co. v. Powers,* 192 Wash. 475, 74 P.2d 27, 114 A.L.R. 531 (1937). In *Powers,* the husband changed the beneficiary of a life insurance policy purchased with community funds from his wife to his mother and secretary. This change was made without the wife's knowledge or consent. After the husband's death, the wife and the named beneficiaries made conflicting claims to the proceeds. This court held that a nonconsenting spouse could void her husband's designation of a beneficiary of a policy purchased with community funds. The court reasoned:

> In this state, insurance or the proceeds of insurance are not mere expectancies or choses in action, but are property; and if the premiums are paid by the assets of the community, they constitute community property.

*Powers,* at 484. Since substantial gifts of community prop-

erty may not be made without the consent of both spouses, the change of beneficiaries was held void ab initio.

*Powers* has been consistently questioned over the years on several grounds. *E.g.,* Cross, *The Community Property Law in Washington,* 49 Wash. L. Rev. 729, 790–93 (1974); Comment, *Life Insurance Proceeds as Community Property,* 13 Wash. L. Rev. 321 (1939).

One criticism of *Powers* revolves around its characterization of the designation of a life insurance beneficiary as a present property interest rather than an expectancy. Where the policy owner has the right to change the beneficiary, the named beneficiary has no vested right in the nomination. *Occidental Life Ins. Co. v. Gannon,* 57 Wn.2d 868, 360 P.2d 350 (1961); *Massachusetts Mut. Life Ins. Co. v. Bank of Cal.,* 187 Wash. 565, 60 P.2d 675 (1936). Even if the insured cannot change the beneficiary, the beneficiary's interest is not indefeasibly vested so long as there remain premiums to be paid. *Francis v. Francis,* 89 Wn.2d 511, 573 P.2d 369 (1978). Thus, the characterization of the right to proceeds as a present property interest rather than an expectancy is wrong.

The effect of *Powers* was somewhat diminished by *In re Estate of Towey,* 22 Wn.2d 212, 155 P.2d 273 (1945) which upheld an insured husband's change of beneficiary from his wife to his executor. Under *Towey,* the wife's half interest in the proceeds was preserved but the husband could dispose of his half of the policy proceeds by will.

Finally, in *Francis v. Francis, supra,* this court overruled *Powers,* at least insofar as the *Francis* court held that the insured spouse may designate a person other than his or her spouse as beneficiary of up to one–half of the proceeds of a community–owned policy. *Francis* recognized that designation of a beneficiary is quasi–testamentary rather than a means of making a gift of community property. Since the insured spouse has the right to dispose of one–half of the community property upon his or her death, designation of a beneficiary other than his or her spouse as to one–half of the proceeds is permissible.

## RISK PAYMENT APPROACH

*Powers* was also the progenitor of the apportionment rule under which ownership of an insurance policy or its proceeds is separate or community property in proportion to the premiums paid by separate or community property. *See Wilson v. Wilson,* 35 Wn.2d 364, 212 P.2d 1022 (1949); *Small v. Bartyzel,* 27 Wn.2d 176, 177 P.2d 391 (1947). Critics of this apportionment rule argue that it fails to take into account the nature of life insurance, especially term life insurance.[1]

Although numerous variations of life insurance exist, life insurance policies generally may be divided into two broad classes: term insurance and cash value insurance. Premiums purchasing cash value insurance pay for both cash value and protection from risk of death. The cash value, somewhat akin to a savings account, is a permanent cumulative asset against which the owner may borrow, and which the owner may receive upon cancellation of the policy. On the other hand, term insurance has no cash surrender value; premiums purchase only protection from risk of death for a fixed period of time. At the end of that period, there is no asset remaining. The length of time the insured has had the policy and the number of premiums paid are irrelevant.

Based upon these differences in life insurance policies, critics of the apportionment theory argue for adoption of a risk payment theory. The risk payment theory is a functional approach which takes into account the manner in which values accrue under various types of policies. Under this theory, the proceeds of a life insurance policy are characterized by determining the source of funds which paid for the risk portion of the policy. In the case of term

---

[1]*See Small v. Bartyzel,* 27 Wn.2d 176, 180, 177 P.2d 391 (1947) (Mallery, J., dissenting); Blanton & Ipsen, *Life Insurance: An Argument for Adoption of the Risk Payment Doctrine in Idaho,* 17 Idaho L. Rev. 423 (1981); Higbee, *Applying the Risk Payment Doctrine to Community and Separate Property Interests in Life Insurance Proceeds: Its Federal Estate Tax Consequences,* 4 Community Prop. J. 87 (1977); Comment, *Community and Separate Property Interests in Life Insurance Proceeds: A Fresh Look,* 51 Wash. L. Rev. 351 (1975).

insurance, only the character of funds used to purchase the most recent premium is significant because term insurance premiums purchase solely protection from risk of death. Hence, the character of a term policy should depend upon whether payment for the most recent premium was made with community or separate funds.

Courts in several community property jurisdictions have adopted, at least implicitly, a risk payment approach to characterization of term life insurance policies. For example, in *Lock v. Lock,* 8 Ariz. App. 138, 145, 444 P.2d 163 (1968), the Arizona Court of Appeals stated:

> [S]eparate funds paid for *all* of the coverage that resulted at the time of Mr. Lock's death. The fact that the community that had existed between [the decedent insured,] Charles Henry Lock and [his first wife,] Hazel Margaret Lock had paid a premium for a risk long since expired without loss would not give this community estate any vested interest in the proceeds of the policy.

*Accord, Gaethje v. Gaethje,* 8 Ariz. App. 47, 442 P.2d 870 (1968); *Travelers Ins. Co. v. Johnson,* 97 Idaho 336, 544 P.2d 294 (1976); *In re Estate of Schleis,* 97 N.M. 561, 642 P.2d 164 (1982); *Phillips v. Wellborn,* 89 N.M. 340, 552 P.2d 471 (1976).

The California courts have rejected the risk payment approach. *See, e.g., Biltoft v. Wootten,* 96 Cal. App. 3d 58, 157 Cal. Rptr. 581 (1979); *Modern Woodmen of Am. v. Gray,* 113 Cal. App. 729, 299 P. 754 (1931). These courts reason that insurability, *i.e.,* the right of the insured to keep the policy in force past the time when he or she could obtain an identical policy from the same company, is a valuable right. According to these courts, this valuable right is derived at the inception of the contract and is, therefore, subject to apportionment.

While we recognize that insurability may have value in certain policies, we reject the approach of the California courts. This approach is based in part upon the questionable assumption that uninsurability occurs at the inception of the contract. Generally, however, uninsurability occurs as

one grows older, and any value attached to insurability is, therefore, more likely to be attributable to later premium payments than to initial payments. *See* Comment, *Community and Separate Property Interests in Life Insurance Proceedings: A Fresh Look,* 51 Wash. L. Rev. 351, 376 (1975). Further, valuation of insurability can be complex. While the complexity of determining values alone may not be a sufficient reason to reject apportionment, we seek to adopt a rule that will add simplicity to the determination of life insurance beneficiaries. Finally, the California courts' approach does not take into account the fact that many term life insurance policies, especially group policies, do not require evidence of insurability for participation. *See* Comment, 51 Wash. L. Rev. at 371; 1 J. Appleman, *Insurance* § 44, at 118 (1981); 19 G. Couch, *Insurance* § 82:11 (2d ed. 1983).

We could adopt a rule requiring inquiry into the various aspects of each insurance policy to determine what, if any, features have present value. We prefer, however, to take a broader approach requiring inquiry only into whether the insurance policy is a term or cash value policy. The rule we adopt will, we hope, have the advantage of ease of application and thus avoid the time and expense of extensive litigation.

In the past, we have expressly reserved the question whether the risk payment theory should be applied as a method of characterizing life insurance policies. *Yeats v. Estate of Yeats,* 90 Wn.2d 201, 208, 580 P.2d 617 (1978). We now resolve that question with respect to term life insurance policies.[2] We hold that the character of funds used to pay for the most recent term should determine the character of a term life insurance policy. Accordingly, insofar as *Small v. Bartyzel, supra, Estate of Madsen v. Commissioner,* 97 Wn.2d 792, 650 P.2d 196 (1982) and *Stephen v. Gallion,* 5 Wn. App. 747, 491 P.2d 238 (1971) indicate the

---

[2]We need not decide whether the risk payment doctrine should be applied, in whole or in part, to cash value policies.

characterization of a term life insurance policy should be determined by apportionment, they are overruled.

We now apply the risk payment doctrine to the Wadsworth policy.

Because the community funds of Sharon and Lawrence Wadsworth were used to purchase coverage for the most recent term, the policy was the community property of Sharon and Lawrence. Any coverage paid for by the marital community of Joan and Lawrence Wadsworth had expired without loss long before Lawrence's death. The adequacy of identification of the policy in their separation agreement is no longer material.

Upon Lawrence's death, Sharon became entitled to one-half of the proceeds from this community property source. *Francis v. Francis, supra.* The decedent had the power to direct the disposition of the other half of the proceeds. The disposition of the decedent's share depends upon whether his designation of Joan Wadsworth as beneficiary is valid. We turn next to this issue.

### New Rule for Determination of Beneficiary

In a separation agreement, incorporated into their dissolution decree, Joan Wadsworth transferred to Lawrence Wadsworth "as his sole and separate property, free and clear of any right, title, or interest on her part . . . all life insurance policies insuring his life." Joan and amicus argue that such a decree should divest the former spouse only of present ownership interests in life insurance policies, not of any expectancy interest he or she might have as named beneficiary. We agree.

### A

Different jurisdictions have resolved, in various manners, the recurring question of the effect of dissolution upon the nomination of a former spouse as beneficiary of a life insurance policy. *See generally* Annot., *Divorce Decree Purporting To Award Life Insurance to Husband as Terminating Wife–Beneficiary's Rights Notwithstanding Failure To Formally Change Beneficiary,* 70 A.L.R.3d 348

(1976). Most courts hold that the former spouse/beneficiary's rights are not terminated solely by the fact of divorce. The rights of the former spouse/beneficiary may, however, be divested by a policy clause, statute, separation agreement or dissolution decree. Despite such divestiture, some courts have held that the former spouse's right to the proceeds as named beneficiary may be restored by subsequent gift of the insured spouse. To determine whether such a gift has been made, inquiry into the donative intent of the insured spouse is necessary. *See* 4 G. Couch, *Insurance* § 27:111 (2d ed. 1960 & Supp. 1983).

Washington follows the majority rule that dissolution of a marriage does not in itself divest a former spouse of the right to be named beneficiary. *Stokes v. McDowell,* 70 Wn.2d 694, 424 P.2d 910 (1967). A former spouse may be divested of that right, however, by the terms of a separation agreement or dissolution decree.

This court has held that a former spouse was divested of any interest she might have had as named beneficiary of a life insurance policy by a property settlement agreement which had been approved in the divorce decree. *United Benefit Life Ins. Co. v. Price,* 46 Wn.2d 587, 283 P.2d 119 (1955). In *Price,* the property settlement agreement awarded to the husband all insurance policies on his life and all other property of the parties, other than the property awarded to the wife. *Price,* at 588. Relying upon *Occidental Life Ins. Co. v. Powers,* 192 Wash. 475, 74 P.2d 27, 114 A.L.R. 531 (1937), the *Price* court reasoned that the interest of a beneficiary in a community–owned life insurance policy "is an asset in which the community has a very real interest". *Price,* at 589. Under the terms of the decree, the former wife gave up this interest.

*Price* was immediately criticized for keeping alive "one more aspect of the unfortunate doctrine handed down" in *Powers.* Note, *Insurance—Effect of a Divorce Decree,* 31 Wash. L. Rev. 146 (1956). As discussed above, *Powers* is based upon the faulty reasoning that the beneficiary's expectancy is a present property interest. Likewise, *Price* is

based upon an approach which fails to distinguish between present rights of ownership in a life insurance policy and the mere expectancy of the beneficiary in the proceeds.

## B

The failure to distinguish properly between present property rights in insurance policies and the expectancies of beneficiaries has created confusion in interpreting property settlement agreements incorporated in dissolution decrees and made difficult the task of determining to whom insurance proceeds should be paid. Amicus curiae has suggested an approach which incorporates the distinction between present interests and future expectancies. We believe this approach will add clarity to this area of law and, therefore, we adopt the following rule.

In general, the beneficiary named in the policy will be entitled to the proceeds to the extent that the present spouse's community property rights are not invaded. We believe this general rule should not apply, however, where the dissolution decree clearly indicates an intent to divest the former spouse of his or her expectancy as beneficiary, so long as that intention is acted upon within a reasonable time after dissolution by formal execution of the change of beneficiary. If the intention is not acted upon within a reasonable time, the owner should be deemed to have decided to retain the named beneficiary as the one entitled to the proceeds.

Whether a reasonable time has passed should be determined by considering the circumstances of the parties and the time required to notify the insurance company of the change of beneficiary. Although a reasonable time may be less than 1 year, we hold that 1 year after dissolution, it will be conclusively presumed that the policy owner intended to retain the named beneficiary as the one entitled to the proceeds.

Thus, the rule we adopt will operate in the following manner. To the extent no community property rights are invaded, the named beneficiary will generally be entitled to

the proceeds. A dissolution decree will divest the former spouse of his or her expectancy as named beneficiary, however, if (1) the dissolution decree, in clear and specific language, states that the former spouse is to be divested of his or her expectancy as beneficiary *and* (2) the policy owner formally executes this stated intention to change the beneficiary within a reasonable time after the dissolution decree has been entered. Thus, if the insured spouse dies within this reasonable time period without formally executing the previously stated intention to change the beneficiary, the former spouse will not be entitled to the proceeds. After a reasonable time has passed, however, the clause in the dissolution decree will be ineffective and the former spouse, if named beneficiary, will be entitled to the proceeds. In any event, 1 year after dissolution, it shall be conclusively presumed that the policy owner intended to retain the named beneficiary as the one entitled to the proceeds.

This rule may not in all cases comport with the parties' expectations. Nevertheless, we believe the expectations of those involved will be met in most cases. Further, this rule should encourage individuals to consider carefully the disposition of life insurance policies in dissolution. Such careful consideration will clarify the intent of the parties and reduce the need, at a later point in time, to inquire into the donative intent of the deceased insured. In addition, the rule we adopt will simplify the procedure of determining to whom life insurance proceeds are to be distributed.

We overrule those cases inconsistent with this approach, including *United Benefit Life Ins. Co. v. Price, supra,* and *In re Estate of Reynolds,* 17 Wn. App. 472, 563 P.2d 1311 (1977).

We now apply our new rule to the subject case. By the terms of their dissolution decree, Joan Wadsworth conveyed to Lawrence Wadsworth, as his separate property, all life insurance policies insuring his life. The decree made no mention of Joan's expectancy as named beneficiary. The language of the decree is inconclusive. It is neither sufficiently clear nor sufficiently specific to indicate an intent to

divest Joan of her expectancy.

Further, even if the decree had contained a clear and specific clause stating that Joan gave up her expectancy as named beneficiary, the clause would be ineffective. Over 3 years had passed between the date of the dissolution decree and the date of Lawrence's death. Such a clause would be effective, under our new rule, only if Lawrence had died within a reasonable time after the decree had been entered. Since Lawrence died over 3 years after the decree, the conclusive presumption that Lawrence intended to retain Joan as beneficiary applies.

## CONCLUSION

In this case, Joan Wadsworth, the named beneficiary, is entitled to the life insurance proceeds to the extent that no community property rights are invaded. The policy was purchased with the community funds of Sharon and Lawrence Wadsworth. Therefore, Sharon is entitled to one–half of the proceeds. Lawrence had dispositive power over the other half of the proceeds. Consequently, his named beneficiary is entitled to his half of the proceeds.

Our resolution of this issue makes it unnecessary to decide whether Lawrence intended to make a gift to Joan by naming her beneficiary.

The case is reversed and remanded to the trial court for entry of judgment, vesting one–half of the subject life insurance proceeds in Joan Wadsworth and the remaining half in Sharon Wadsworth. We award no attorney fees to either party. Joan Wadsworth should be awarded her costs.

WILLIAMS, C.J., ROSELLINI, UTTER, BRACHTENBACH, DOLLIVER, DIMMICK, and PEARSON, JJ., and CUNNINGHAM, J. Pro Tem., concur.