[No. 17284–1–I.   Division One.   June 15, 1987.]

AETNA LIFE INSURANCE COMPANY, *Respondent*, v.
SANDRA WICK BUNT, *Appellant*, ANN R.
BUNT, *Respondent*.

*Rynold C. Fleck,* for appellant.

*Fred T. Smart* and *Lee, Smart, Cook, Martin & Patterson, Inc., P.S.,* for respondent Aetna Life Insurance Co.

*J. Robert Walker,* for respondent Bunt.

PEKELIS, J.—Aetna Life Insurance Company brought this interpleader action to determine the owner of the proceeds of a policy on the life of George M. Bunt, decedent, a divorced and remarried man. Sandra Wick Bunt, surviving spouse, appeals the trial court's order on cross motions for summary judgment awarding the proceeds of the policy to Ann R. Bunt, George's former wife, as guardian for minors Michael D. Bunt and Patrick D. Bunt.

On June 26, 1981, George and Ann entered into a separation agreement by which George agreed to name their two minor children as irrevocable beneficiaries of the Aetna life insurance policy available to George as a Boeing employee, and to maintain that policy for the children's benefit. The agreement further provided that George would retain ownership of the policy as his separate property. George and Ann were divorced on October 1, 1981. The decree incorporated the separation agreement and, in addition, expressly required George to name the children as beneficiaries of the policy to be maintained for their benefit during their dependency.

On August 27, 1982, George married Sandra. On January 13, 1983, George changed the beneficiary designation on the Aetna policy to Sandra. George died on December 18, 1984. Without notice of conflicting claims, Aetna paid an advance to Sandra of $8,437, which was 10 percent of the principal amount of $84,375.

This action was subsequently commenced, and on cross

motions for summary judgment, the trial court ordered the remaining funds to be paid to Ann, as guardian for Michael and Patrick, and entered judgment in favor of Ann against Sandra in the amount of the advance. Sandra appeals from the granting of Ann's motion and denial of hers.

A summary judgment motion under CR 56(c) should be granted only if the pleadings, affidavits, and admissions on file show that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. *Wilson v. Steinbach,* 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). The appellate court reviews a summary judgment de novo; that is, we engage in the same inquiry as the trial court. *Wilson,* 98 Wn.2d at 437.

Sandra argues that there are no material facts at issue and she is entitled to (1) one-half of the proceeds by virtue of having been named as beneficiary by the decedent, and (2) the other half of the proceeds based on her community interest in the policy. We first address the issue of whether Sandra's rights as designated beneficiary overcome George's prior child support obligation pursuant to the decree and the separation agreement.

It is well settled that a parent must meet an antenuptial obligation to pay child support. *Van Dyke v. Thompson,* 95 Wn.2d 726, 730, 630 P.2d 420 (1981); RCW 26.16.205. The Aetna policy here served as security for George's obligation to support his dependent children. Such security for support provisions in separation agreements are valid and have been repeatedly upheld. *See, e.g., Sutherland v. Sutherland,* 77 Wn.2d 6, 459 P.2d 397 (1969); *Riser v. Riser,* 7 Wn. App. 647, 501 P.2d 1069 (1972).

However, Sandra asserts that by the terms of the decree, the policy, as property, became solely George's, and thus he was free to change beneficiaries as he wished. Sandra claims to find support for her contention in the recent case of *Porter v. Porter,* 107 Wn.2d 43, 726 P.2d 459 (1986), which she interprets as allowing an insured who owns the policy to freely designate a beneficiary without regard to prior antenuptial obligations.

■ First, Sandra fails to recognize the distinction between George's present rights of ownership and the legitimate limitations placed on his right to control the beneficiary designation. *See Kirk v. Continental Life & Accident Co.*, 85 Wn.2d 85, 530 P.2d 643 (1975). Since George's right to deal freely with the policy was restricted, his designation of Sandra as beneficiary is invalid.

Sandra also misinterprets *Porter*. Mr. Porter, like Bunt, was required by decree and separation agreement to name and maintain his child as beneficiary of a term life insurance policy. Porter named his estate instead. *Porter*, 107 Wn.2d at 47. However, he then substantially fulfilled his obligation by designating his son's trust to take the remainder of his estate, which was comprised of Porter's one–half of the term insurance proceeds. *See Porter*, 107 Wn.2d at 53–54. Porter's second wife later made unauthorized expenditures from those estate funds. The court restored those funds to the son, reasoning that the policy proceeds passed through the estate free of creditor's claims which arose from the second wife's unauthorized spending. *Porter*, 107 Wn.2d at 46, 53–54. *Porter* cannot be read as condoning violation of the decree; the violation simply was not significant in that case since the new designation did not materially affect the result.

Thus, we uphold the decree's provisions ordering George to maintain his children as irrevocable beneficiaries during their dependency, and hold that that portion of the policy proceeds attributable to George's property interest in the policy should be awarded to Ann, as the children's guardian.

Our conclusion, however, does not end the analysis. We must next consider the question of whether George owned the entire policy as his separate property, or whether George and Sandra each had a half interest in the policy as their community property.

■ In the case of term life insurance, the character of funds used to pay the premium for the most recent term determines the character of the policy as community or

separate. *Aetna Life Ins. Co. v. Wadsworth,* 102 Wn.2d 652, 659, 689 P.2d 46 (1984). Where insurance premiums are paid as a fringe benefit of employment to a married employee, the premiums constitute community earnings. *Stephen v. Gallion,* 5 Wn. App. 747, 749–50, 491 P.2d 238 (1971), *overruled on other grounds in Aetna Life Ins. Co. v. Wadsworth,* 102 Wn.2d at 659–60. This rule is simply a specific application of the general proposition that an asset onerously acquired during marriage is presumed to be community property. RCW 26.16.030; *Yesler v. Hochstettler,* 4 Wash. 349, 353–55, 30 P. 398 (1892). Thus, such a policy presumptively will be community in character.

In *Porter v. Porter, supra,* decided after the trial court rendered its opinion in the case before us, the court confronted the clash of policies presented by enforcing antenuptial child support obligations, on one hand, and upholding the community property rights of a nonobligated spouse, on the other. *Porter* holds that "an antenuptial obligation to maintain a minor child as beneficiary of a term life insurance policy as security for support may not invade the interest of a subsequent community in that policy." *Porter,* 107 Wn.2d at 51.

The community's interest in the policy consists of its contract rights, which include the inter vivos right of the insured spouse to designate beneficiaries as to that spouse's one–half, and the right of the noninsured spouse to receive one–half of the proceeds upon the death of the insured. *See Wadsworth,* 102 Wn.2d at 655–56; *Francis v. Francis,* 89 Wn.2d 511, 514, 573 P.2d 369 (1978); Cross, *The Community Property Law in Washington (Revised 1985),* 61 Wash. L. Rev. 13, 43, 84–85 (1986). Thus, any beneficiary named by the obligated spouse will be entitled to no more than one–half of the proceeds. *See Porter,* 107 Wn.2d at 51. This rule pertains whether the antenuptial obligation is viewed as a child support obligation under the decree or as a contractual obligation under a separation agreement.

*Porter,* 107 Wn.2d at 51–53.[1]

*Porter* specifically disapproved of *Crozier v. Equitable Life Assur. Soc'y,* 33 Wn. App. 828, 658 P.2d 39 (1983). In *Crozier,* the court held that children of a prior marriage were entitled to the entire proceeds of a term life insurance policy that the father was required by decree to maintain for their benefit, reasoning that the father's ownership of the policy was encumbered when he entered the second marriage. *Crozier,* 33 Wn. App. at 831. *Porter* rejected this "encumbered spouse" analysis, stating that the proper result would be to award the second wife one–half of the proceeds, based on her community interest in the policy. *See Porter,* 107 Wn.2d at 52–53.[2]

Since the policy in the case before us was a term policy provided as a benefit incident to George's employment, and since George and Sandra were married at the time of the last premium payment, the presumption is that the policy was a community asset. If so, Sandra would have a one–half interest in this community property and the attendant right to receive one–half of the proceeds upon George's death, regardless of his antenuptial obligations.

This case, however, presents an issue of material fact that prevents us from determining on summary judgment whether or not Sandra had a community property interest in the policy. George and Sandra were separated nearly a year before his death. In Sandra's Petition for Legal Separation, which she verified and signed on March 20, 1984,

---

[1]This result limits the effectiveness of a life insurance provision in a decree of dissolution to secure payment of child support. Even in a situation where all parties complied with the terms of a decree by maintaining the children as beneficiaries, a second spouse would be entitled to claim one–half of the policy proceeds.

[2]We note that neither in the case sub judice nor in *Porter* is there any contention that the 1983 amendments to RCW 26.16.200 have any applicability here. Those amendments were enacted May 19, 1983, after the decision in *Crozier.* They specifically provided that a child support obligation may be collected from the debtor spouse's earnings and accumulations, in which the nondebtor spouse has no interest for purposes of that section. *See generally* Cross, 61 Wash. L. Rev. at 128–31.

she stated, *inter alia*:

> 5. Separation. The parties separated on or about January 1, 1984.
>
> . . .
>
> 7. The property of the parties is the separate property of each party; they have accumulated no community property. The following is a fair and equitable distribution of the separate property of each party:
>
> . . .
>
> B. The husband should be awarded as his sole and separate property:
>
> . . .
>
> v. All life, health or disability policies on the husband.

. . .

Petition for Legal Separation at 1-3. She concluded by requesting the court to award the property in accordance with those terms.

■ The earnings of each are considered separate property if the spouses are living separate and apart. RCW 26.16.140. Thus, if Sandra and George remained separated when payment was made of the premium covering the period of time during which he died, the payment came from his separate property earnings. The policy would then be his separate property under *Wadsworth,* 102 Wn.2d at 659, and Sandra would have no community property rights to the proceeds. *See generally* Cross, 61 Wash. L. Rev. at 32-35 (discussing acquisition while living separate and apart).

In sum, George's legal and contractual duty of support to his children limited his power to deal freely with this policy. We hold that the award of the insurance policy to him as his separate property, pursuant to the dissolution of his marriage to Ann, did not give him the right to change beneficiaries in derogation of the decree and his contractual obligations to maintain his children as irrevocable beneficiaries. The subsequent designation of Sandra as beneficiary was invalid and is without effect.

Nevertheless, if the marital community of George and Sandra existed at the time the last premium payment was

made, Sandra *may* have been the owner of one–half the policy and would therefore be entitled to one–half of the proceeds.[3] Before the issue of Sandra's ownership can be decided, the trial court must resolve the question of whether a community relationship existed at the time the last premium payment was made. We remand for such a determination and affirm the award of George's half to Ann, for their minor children.

COLEMAN and WEBSTER, JJ., concur.

Review granted by Supreme Court September 1, 1987.

---

[3]The issue is not here presented, and we therefore do not decide whether even if there was a viable marriage at the time of death, Sandra's petition, other conduct, or both estop her from claiming that the policy was community in character. *See Porter,* 107 Wn.2d at 49–50.