[No. 54133–7.   En Banc.   April 28, 1988.]

AETNA LIFE INSURANCE COMPANY, *Respondent,* v.
SANDRA WICK BUNT, *Petitioner,* ANN R.
BUNT, *Respondent.*

*Rynold C. Fleck,* for petitioner.

*J. Robert Walker,* for respondent Bunt.

UTTER, J.—Petitioner Sandra Wick Bunt, the second wife of George M. Bunt (deceased), seeks a reversal of a Court of Appeals decision which granted one-half of the proceeds of the deceased's term life insurance policy to his minor children by a former marriage, and granted her the other half only if she could prove upon remand to the trial court that the last premium payment was made from community funds. We reverse in part and grant full summary judgment to the minor children.

Aetna Life Insurance Company brought this interpleader action to determine the ownership of the proceeds of a policy on the life of George M. Bunt, a divorced and remarried man. The proceeds are claimed by his surviving wife, Sandra (petitioner), and the two minor children of his former marriage who are represented in this action by their mother.

On June 26, 1981, George and his first wife entered into a separation agreement under which George agreed to name their two minor children as irrevocable beneficiaries of the Aetna life insurance policy available to George as a Boeing employee. He agreed to maintain that policy for the children's benefit during their dependency. The agreement further provided that George would retain ownership of the policy as his separate property. George and his first wife were divorced on October 1, 1981. The dissolution decree incorporated their separation agreement and, in addition, expressly required George to name the children as beneficiaries of the policy to be maintained for their benefit. George promptly made the necessary changes to his life insurance policy and the two boys were designated as sole beneficiaries of the policy.

One year later George married Sandra. Contrary to express court order, George changed the beneficiary designation on the Aetna policy in January 1983 to his second wife. The following year, Sandra petitioned for legal separation from George. The petition stated that the couple had been separated since January 1, 1984. While this separation action was pending, George died. At the time of Mr. Bunt's death, the two children were ages 13 and 14 and the value of the life insurance was $84,370.

Aetna was unaware of the children's interests in the proceeds. Upon receiving confirmation of George's death, Aetna advanced $8,437 to Sandra, 10 percent of the face value of the term insurance. Upon learning of the children's claims, Aetna brought the present interpleader action naming the second wife, first wife and the two children as defendants. The children submitted a claim for $96,300, of which $11,000 was for current unpaid support.

On cross motions for summary judgment, the trial court ordered the remaining funds to be paid to the first wife, as guardian for the two children, and entered judgment in favor of the children against Sandra, the second wife, in the amount of the advance from Aetna. Sandra appealed to the Court of Appeals, which affirmed as to half of the policy

proceeds. This court granted Sandra's petition for discretionary review.

This court's review of a summary judgment is de novo. Accordingly, a summary judgment will be affirmed if the pleadings, affidavits and admissions on file show that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

# I

Petitioner suggests two arguments to support her claim to the entire proceeds. First, she urges that she is entitled to receive all of the money because she is the deceased's "surviving spouse". As surviving spouse, petitioner claims that community property law entitles her to take one–half of the proceeds, citing this court's opinions in *Porter v. Porter*, 107 Wn.2d 43, 726 P.2d 459 (1986) and *Aetna Life Ins. Co. v. Wadsworth*, 102 Wn.2d 652, 689 P.2d 46 (1984). Second, petitioner claims that her status as designated beneficiary entitles her to the remaining half of the proceeds because her husband was free to dispose of his separate share of the policy however he wished.

■ Mere status as surviving spouse is not a sufficient basis for a community property claim. A surviving spouse has a community property interest in a life insurance policy only to the extent that community funds were used to purchase the policy. *See Francis v. Francis*, 89 Wn.2d 511, 573 P.2d 369 (1978); *Wadsworth*, at 659. Petitioner has presented us no authority for recognizing a community property interest in a term life insurance policy solely on the basis of being a "surviving spouse"; if community funds were not used to pay the last premium, there is no community interest in the policy.

The ownership character of a term life insurance policy depends upon the character of the funds used to pay the premium for the most recent term. *Wadsworth*, at 659. Where the last insurance premium payment was paid as a fringe benefit of employment to a married employee, the

premiums presumptively constitute community earnings. *Stephen v. Gallion,* 5 Wn. App. 747, 749–50, 491 P.2d 238 (1971), *overruled on other grounds in Wadsworth,* at 659–60. This follows from the strong presumption that assets acquired during marriage are community property. *See* RCW 26.16.030. Since the petitioner and the deceased were lawfully married at the time of his death,[1] and since the premium payments were paid as a fringe benefit of his employment with the Boeing Company, the community property presumption applies.

██ The community property presumption is not conclusive, however. RCW 26.16.140 provides that the respective earnings of a husband and wife who are living separate and apart "shall be the separate property of each." *See Beakley v. Bremerton,* 5 Wn.2d 670, 105 P.2d 40 (1940); *Hokenson v. Hokenson,* 23 Wn.2d 908, 162 P.2d 592 (1945). The law distinguishes between a "marital" and a "community" relationship, the latter concept encompassing more than mere satisfaction of the legal requirements of marriage. It is the fact of community that gives rise to the community property statute; when there is no "community", there can be no community property. *See* Cross, *The Community Property Law in Washington* (revised 1985), 61 Wash. L. Rev. 13, 33 (1986).

While mere physical separation does not dissolve the community, *Kerr v. Cochran,* 65 Wn.2d 211, 396 P.2d 642 (1964), it is not necessary for the operation of RCW 26.16-.140 that a dissolution action be final or even pending. *Togliatti v. Robertson,* 29 Wn.2d 844, 190 P.2d 575 (1948). Rather, this statute applies to those marriages that are for all practical purposes "defunct". *Rustad v. Rustad,* 61 Wn.2d 176, 180, 377 P.2d 414 (1963).

---

[1]Although a petition for legal separation had been filed prior to George Bunt's death, the general rule is that a dissolution action abates upon the death of one of the spouses. *In re Marriage of Pratt,* 99 Wn.2d 905, 908, 665 P.2d 400 (1983).

Petitioner stated in her legal separation petition (signed on March 20, 1984) that she and the decedent were separated as of January 1, 1984. The decedent died on December 18, 1984. The fact that a separation petition had been filed and that petitioner and the deceased were separated and living apart for the 11½ months prior to his death strongly suggests that for all practical purposes their marriage was "defunct". Petitioner does not argue otherwise.

Petitioner's claim to a community property interest in the proceeds of George Bunt's life insurance policy is seriously undermined by the petition for legal separation she signed in March 1984. That petition states categorically that she and George Bunt *"have accumulated no community property"*. (Italics ours.) The petition further states that "[a]ll life, health or disability policies on the husband [George Bunt]" belonged to him "as his sole and separate property". Supplemental Clerk's Papers, at 30, 31. Petitioner did not controvert this evidence. She does not argue that the final premium was paid out of community funds; only that she is the "surviving spouse". Clerk's Papers, at 37–42, 45–47; Brief of Appellant, at 16–19. Mere status as surviving spouse is not a sufficient basis for a community property claim.

Thus, on the basis of the pleadings, affidavits, and admissions on file, there appears to be no genuine issue regarding the community versus separate character of this insurance policy. Although no specific allegation has been made by either party regarding the character of the funds used to pay the last premium on this policy, the guardian has argued and submitted evidence showing that there was no community property between petitioner and deceased, and that the particular insurance policy in question was deceased's separate property. Petitioner failed to present any evidence or arguments that would suggest otherwise. Therefore, we conclude that the insurance policy was George Bunt's separate property and that petitioner's

status as surviving spouse gave her no special rights to the proceeds.

## II

Petitioner argues alternatively that the ownership character of the policy makes no difference in this case since she is the designated beneficiary of the policy and is entitled to take free of all creditors, including minor children for whom the deceased had an antenuptial support obligation. As authority for this position, she relies upon the insurance proceeds exemption statute, RCW 48.18.410 and .420, and our recent decision in *Porter v. Porter, supra.* In both instances, the reliance is misplaced.

An insured's designation of a beneficiary in a term insurance policy will generally be upheld. Even if the policy is community property, the designated beneficiary is entitled to one–half of the proceeds since half of the policy is deemed to be the deceased's separate property. *See Francis v. Francis, supra; Aetna Life Ins. Co. v. Wadsworth, supra.* Thus, even though a divorce or separation may terminate one spouse's community property interests in the proceeds of a life insurance policy, the separated or divorced spouse may still have a claim to the proceeds if the other spouse fails to designate a new beneficiary. *Wadsworth,* at 661.

Petitioner argues that the separation agreement between George and Ann, his first wife, which gave George "[a]ll right, title and interest of the Husband in . . . group insurance acquired by virtue of his employment" (Supplemental Clerk's Papers, at 25), meant that the Aetna policy was George's separate property. Because the policy was his separate property, petitioner claims that George could freely designate a beneficiary without regard to his prior obligations to his children.

This conclusion is non sequitur. The mere fact that George Bunt had a present ownership interest in the life insurance policy that was regarded as his separate property vis–a–vis his first wife has little to do with his right to

change the designated beneficiary from the two minor children to his second wife. His first wife appears in this action not to assert her personal interests in the proceeds but as guardian ad litem for the two minor children. The children's interests in the insurance policy do not depend upon whether ownership is characterized as separate or community as between George and his first wife.

Nor can petitioner find support for her position in *Porter*. In that case, the remarried father, who was also subject to a court order to maintain a life insurance policy for the benefit of his minor son, changed the designated beneficiary to his estate. While we did not invalidate the new designation, it was with the clear appreciation that Mr. Porter substantially complied with the court order by designating his son's trust to take the remainder of his estate, which was comprised of Porter's one–half of the term insurance proceeds. *Porter,* at 54. Although the change of beneficiaries in that case violated the court decree, the deceased had made alternative arrangements that effectuated the underlying purpose and intent of the decree. Other courts examining similar facts have come to the same conclusion. *See Pittman v. Pittman,* 419 So. 2d 1376 (Ala. 1982).

■ Our previous rulings make clear that the antenuptial responsibility for child support must be met by an obligated parent. *Van Dyke v. Thompson,* 95 Wn.2d 726, 730, 630 P.2d 420 (1981). The subsequent marriage of a divorced husband and father does not relieve him of his prior support obligations. *Fisch v. Marler,* 1 Wn.2d 698, 97 P.2d 147 (1939); *Dillon v. Dillon,* 34 Wn.2d 12, 207 P.2d 752 (1949); *Verde v. Verde,* 78 Wn.2d 206, 471 P.2d 84 (1970). *Porter* precludes enforcement of such obligations only to the extent that they would "inequitably invade" the community property rights of a surviving spouse. *Porter,* at 52. Where the rights of a surviving spouse rest solely on her designation as beneficiary in a policy that is the separate property of the deceased spouse, we see no reason not to enforce in full the child support obligations.

Petitioner points out that the trial court's decision in this case relied upon the "encumbered spouse" doctrine found in *Crozier v. Equitable Life Assur. Soc'y of United States,* 33 Wn. App. 828, 658 P.2d 39 (1983) and *Puckett v. Puckett,* 41 Wn. App. 78, 702 P.2d 477 (1985), and subsequently rejected by this court in *Porter.* The encumbered spouse doctrine held that a parent with a preexisting child support obligation who remarries enters the new marriage "encumbered"; to the extent of this encumbrance, the claims of minor children were given higher priority than the community property claims of a surviving spouse. Because application of this doctrine defeated the legitimate community property interests of the surviving spouse we rejected it. *Porter,* at 52–53.

Our rejection of the encumbered spouse doctrine is of little assistance to petitioner in her argument based upon her status as designated beneficiary. There is no conflict here between community property interests and the separate preexisting child support obligations of the deceased spouse. The competing interests are simply a party who was designated as beneficiary contrary to express court order and a party for whose benefit the court ordered the policy to be maintained. As between these two conflicting interests, the court order should be enforced and the proceeds distributed to the minor children.

Arguing for a contrary conclusion, petitioner cites the insurance proceeds exemption statute in RCW 48.18.410 and RCW 48.18.420 to the effect that the designated beneficiary of a life insurance policy has a statutory right to the entire proceeds free from the claims of creditors. Her reliance on this statute is misplaced for several reasons. First, RCW 48.18.420 exempts insurance proceeds only from the liabilities of the beneficiary and others having a right in the policy.[2] By its terms, this statute does not preclude direct

---

[2] RCW 48.18.420(1) provides that:

"A policy of group life insurance or the proceeds thereof payable to the individual insured or to the beneficiary thereunder, shall not be liable . . . to be

claims to the insurance proceeds, such as those filed in this case by the two minor children.

Second, even assuming that our law relegates minor children seeking child support to the status of mere creditors, a closer reading of the statute reveals petitioner to be outside the class of beneficiaries the statute is meant to protect.

RCW 48.18.410(1) provides that:

> The *lawful* beneficiary . . . of a life insurance policy . . . shall be entitled to the proceeds and avails of the policy against the creditors and representatives of the insured . . .

(Italics ours.) The exemption statute does not protect *all* beneficiaries from the claims of the deceased's creditors; only those deemed "lawful". While petitioner is the *designated* beneficiary of the life insurance policy, the question here is whether she is the "*lawful*" beneficiary.

It is not contested that George Bunt violated the express decree of the court when he changed the designated beneficiary on his policy from his two minor children to his second wife. According to the terms of the court order dissolving the marriage with his first wife, the designation of the children as beneficiaries was irrevocable. Clerk's Papers, at 13. Designating his second wife as the beneficiary was thus directly contrary to law. Therefore, petitioner is not a "lawful" beneficiary and is not within the class of beneficiaries entitled to take the proceeds free from the claims of creditors.

Third, and most important, the claims for child support, like those for spousal maintenance, are not equivalent to the claims of "creditors" to which the insurance proceeds exemption statute is directed. The basis for child support is the natural obligation of a parent to support his or her children; the validity of their claim does not depend upon either contract or judgment. The purpose of exemption

applied to any legal or equitable process to pay any liability of any person having a right under the policy."

statutes such as RCW 48.18.410 is to protect the unfortunate debtor and save him a means of supporting his family. *See* 31 Am. Jur. 2d *Exemptions* § 3 (1967). Applying these two broad principles, courts have generally held that statutes exempting property from legal process in the enforcement for a claim of debt do not apply against claims for spousal maintenance or child support; such claims are not debts, and a court decree imposing payment obligations does not create a debtor–creditor relationship between the child and the obligated parent. *See* Annot., 54 A.L.R.2d 1422, 1424 (1957).

Washington case law has followed this general rule. In a landmark opinion construing Const. art. 1, § 17 (prohibiting imprisonment for debt), this court declared that it was "the well settled law of this country" that a court order for alimony and child support does not create a "debt" within the meaning of the constitutional prohibition. *In re Cave*, 26 Wash. 213, 216, 66 P. 425 (1901). *See also Decker v. Decker*, 52 Wn.2d 456, 326 P.2d 332 (1958) (holding that Const. art. 1, § 17 did not preclude a trial court using its contempt powers and imprisonment to enforce compliance with a divorce decree); *Valaer v. Valaer*, 45 Wn.2d 565, 277 P.2d 326 (1954).

The exemption statutes have been similarly applied. Construing the meaning of Rem. Rev. Stat. § 569, a predecessor insurance exemption statute with similar language to RCW 48.18.410,[3] this court stated that a family support obligation following divorce "is not a debt or liability within the meaning of . . . any statute relating to exemptions." *Haakenson v. Coldiron*, 190 Wash. 627, 630, 70 P.2d 294 (1937). In *Pishue v. Pishue*, 32 Wn.2d 750, 203 P.2d 1070 (1949), this court ruled that despite the statutory exemption of veterans' benefit payments from the claims and

---

[3]Rem. Rev. Stat. § 569 provided that "the proceeds or avails of all accident and health insurance heretofore or hereafter effected shall be exempt from all liability for any debt of the assured, and any debt of the beneficiary existing at the time the policy is made available for his use." *Haakenson v. Coldiron*, 190 Wash. 627, 628, 70 P.2d 294 (1937).

processes of creditors, a divorced wife was entitled under the decree to support money for a minor child since such claims are not those of a "creditor". *Pishue,* at 756. We have also held that a defendant husband's traditional homestead exemption will not defeat a lien levied on the property to secure the payment of family support obligations, at least to the extent such property is described in the decree. *Philbrick v. Andrews,* 8 Wash. 7, 35 P. 358 (1894); *Stafford v. Stafford,* 18 Wn.2d 775, 140 P.2d 545 (1943).

We find no reason in the present case to depart from our traditional approach that spousal or child support claimants are not "creditors" within the meaning of exemption statutes such as RCW 48.18.410 and .420.[4]

The duty of parents to provide support for their minor children is fundamental to the well being of our society. This duty is, as the 19th century English jurist Blackstone described, "a principle of natural law." 1 W. Blackstone, *Commentaries* § 447, *quoted in Grotsky v. Grotsky,* 58 N.J. 354, 277 A.2d 535 (1971). The obligation is not a debt as contemplated by the insurance proceeds exemption statute but is instead an obligation growing out of the parental status and public policy, the performance of which can be compelled by imprisonment as well as judgment and writ of execution. *See* RCW 26.18.050 and RCW 26.18.070 *et seq.* We cannot assume that the State Legislature ever intended that the proceeds of a life insurance policy that was legally pledged to the minor children as security for future child support would be insulated from such child support claims by operation of the exemption statute.

George's rights of ownership and the legitimate limitations placed on his right to control the beneficiary designation can be distinguished. *See Kirk v. Continental Life &*

---

[4]There is language in *Porter* evaluating family support claimants as "creditors" under the insurance proceeds statute. *Porter,* at 53, 54. However, this label was applied primarily as an analytical device in distinguishing community property interests and antenuptial child support claimants. It was not intended to be an interpretation of the statute nor to affix this label to child support claimants.

*Accident Co.,* 85 Wn.2d 85, 89, 530 P.2d 643 (1975). We agree with the conclusion reached by the Court of Appeals that George's right to deal freely with the policy was restricted and therefore, his designation of Sandra as beneficiary was invalid. *Aetna Life Ins. Co. v. Bunt,* 48 Wn. App. 238, 241, 738 P.2d 322 (1987). The children, as "irrevocable beneficiaries" under the court decree, have a vested equitable interest in the proceeds of this policy which could not be divested by a subsequent formal change of beneficiary. To hold otherwise would allow parents to escape their profound duty to support their children.

The great weight of authority throughout the country supports this result on similar facts. Annot., 59 A.L.R.3d 9 (1974 & Supp. 1987). *See* 44 Am. Jur. 2d *Insurance* § 1776 (1982); *Markwica v. Davis,* 64 N.Y.2d 38, 473 N.E.2d 750, 484 N.Y.S.2d 522 (1984); *General Am. Life Ins. Co. v. Rogers,* 539 S.W.2d 693 (Mo. Ct. App. 1976); *Green v. Green,* 13 Mass. App. Ct. 340, 433 N.E.2d 92 (1982); *Jackson v. Jackson,* 279 S.C. 618, 310 S.E.2d 827 (Ct. App. 1983); *Murphy v. Travelers Ins. Co.,* 534 F.2d 1155 (5th Cir. 1976); *McKissick v. McKissick,* 93 Nev. 139, 560 P.2d 1366 (1977); *Sinsel v. Sinsel,* 47 Or. App. 153, 614 P.2d 115 (1980); *Carpenter v. Carpenter,* 150 Ariz. 62, 722 P.2d 298 (1985).

### III

Designating minor children as beneficiaries of life insurance policies has become a common element in divorce and separation actions in which children are involved. *See Sutherland v. Sutherland,* 77 Wn.2d 6, 459 P.2d 397 (1969); *Riser v. Riser,* 7 Wn. App. 647, 501 P.2d 1069 (1972). Such provisions serve a useful purpose and satisfy a legitimate need in modern society since insurance is a relatively painless method of protecting children from the untimely death of an obligated parent. Minor children of divorced parents are often vulnerable and face an uncertain future; that vulnerability and uncertainty can only be exacerbated if we fail to enforce the full measure of financial

support that a parent is legally and morally obligated to provide.

Summary judgment is granted to the minor children for the entire proceeds of the term insurance policy on the life of George M. Bunt.

PEARSON, C.J., BRACHTENBACH, DOLLIVER, ANDERSEN, CALLOW, and GOODLOE, JJ., and CUNNINGHAM and PETRIE, JJ. Pro Tem., concur.

After modification, further reconsideration denied July 28, 1988.