[No. 14293-7-II.   Division Two.   December 7, 1993.]

*In the Matter of the Marriage of* OCIE (NMI) SAGER,
*Respondent, and* ESTELLE LORETTA SAGER,
*Appellant.*

*Bertha R.S. Houser,* for appellant.

*Timothy P. Coogan,* for respondent.

MORGAN, J. — This is a dispute over the proceeds of a life insurance policy. We reverse and remand for further proceedings.

The record is so poorly developed that it is difficult to marshal the facts. Nevertheless, it appears that the following facts are not truly disputed.

Estelle and Ocie Sager were married on December 7, 1968. Four children, Benita, Regas, Carolynn and Michelle, were born to the marriage.

In 1984, Ocie petitioned for dissolution. The matter was tried, and a decree was entered on February 22, 1985.

The decree stated in paragraph 5 that Ocie was to pay $700 per month in child support "as long as the oldest minor child, Regas, is in high school."[1] After that, Ocie was to pay $600 per month "for the two remaining minor children, Carolynn and Michelle" until Carolynn "graduates from high school or later reaches the age of 18 years of age or is otherwise sooner emancipated."[2] After that, Ocie was to pay $450 per month for Michelle until she "graduates from high school, or later reaches the age of 18 years or is sooner emancipated."[3]

Additionally, the decree stated in paragraph 8 that Ocie "shall make the minor children of the parties . . . beneficiaries of the medical and life insurance policies which exist through his place of employment."[4] By its terms, this provision did not apply to Benita, because she had reached majority before it was entered. It did apply to Regas, Carolynn, and Michelle, all of whom were minors when it was entered.[5]

After dissolution of his marriage to Estelle, Ocie married Julie Marie Oquist, now Julie Sager. He and Julie were still married when he died on March 17, 1990. At that time, Michelle was still a minor, but the other children were not.

In February 1985 and March 1990, Ocie had group life insurance through the State, by whom he was employed.

---

[1] Clerk's Papers, at 2.

[2] Clerk's Papers, at 2.

[3] Clerk's Papers, at 2.

[4] Clerk's Papers, at 3.

[5] When the decree was entered, Benita was 18, Regas was 16, Carolynn was 15, and Michelle was 6. Clerk's Papers, at 5.

Sometime after dissolution of his marriage to Estelle, he made Julie the sole beneficiary of that insurance. After Ocie died, the proceeds of this insurance were paid into the Pierce County Superior Court by Northwestern Life Insurance Company. Peculiarly, Northwestern did not start an interpleader action. Instead, it paid the money into the 1984 dissolution action, to which Ocie and Estelle had been the original parties.

Estelle and Julie then made competing claims in the 1984 dissolution case. Relying on the 1985 decree, Estelle claimed the entire proceeds on behalf of Michelle. Relying on her status as named beneficiary, Julie also claimed the entire proceeds. The trial court granted judgment in favor of Julie, and Estelle now appeals.

## I

The first problem is whether Estelle has any claim against the proceeds of the Northwestern policy. We ask (A) whether the 1985 decree encumbered the Northwestern policy as of the date the decree was entered, and (B) whether the encumbrance continued until Ocie's death.

## A

A decree does not encumber a particular life insurance policy unless it adequately identifies it. *Sullivan v. Aetna Life & Cas.*, 52 Wn. App. 876, 879, 764 P.2d 1390 (1988), *review denied*, 112 Wn.2d 1009 (1989); *see Aetna Life Ins. Co. v. Bunt*, 110 Wn.2d 368, 754 P.2d 993 (1988). The decree in *Bunt* incorporated a separation agreement stating that the husband would "name their two minor children as irrevocable beneficiaries of the Aetna life insurance policy available to George as a Boeing employee." 110 Wn.2d at 370. The decree in *Sullivan* stated only that "[e]ach party *shall maintain a minimum of $10,000 life insurance* with their minor child as beneficiary until said child attains majority." 52 Wn. App. at 877. The decree in *Bunt* adequately identified the policy in issue, but the decree in *Sullivan* did not.

The decree in this case is more specific than the decree in *Sullivan*, but less specific than the decree in *Bunt*. Like *Bunt*, it said Ocie was required to maintain life insurance that existed through his employment. Like *Sullivan*, it did not identify the employer or the insurer.

Although the decree here is less specific than the one in *Bunt*, we believe it adequately identified the Northwestern policy. It encumbered life insurance that existed through Ocie's employment, and the life insurance existing through Ocie's employment was the Northwestern policy.

### B

Julie makes two arguments designed to show that even if the decree initially encumbered the policy, it ceased to do so before Ocie died. The first argument is based on the fact that the decree omitted to say that Ocie shall "maintain" the minor children as beneficiaries of such life insurance; rather, it said only that Ocie shall "make" the minor children beneficiaries of life insurance existing through his employment. The result, Julie says, is that Ocie's only duty was to "make" the minor children beneficiaries for a moment in time; once he did that, he had no further duty to "maintain" them as beneficiaries, and he could remove them at will. The children apparently were named as beneficiaries of the policy for a period of time following dissolution, so Julie concludes that Ocie's duty to "make" them beneficiaries ended before he substituted her as sole beneficiary on the policy.

We reject this reasoning. If we were to read the decree as requiring Ocie to "make" the children beneficiaries for only a moment in time, we would be reading it as requiring a vain and useless act. We decline to read it that way. *Cf. Oak Harbor Sch. Dist. v. Oak Harbor Educ. Ass'n*, 86 Wn.2d 497, 500, 545 P.2d 1197 (1976) (court will not presume Legislature engaged in useless act); *Kelleher v. Ephrata Sch. Dist. 165*, 56 Wn.2d 866, 355 P.2d 989 (1960) (same); *Fifteen-O-One Fourth Ave. Ltd. Partnership v. Department of Rev.*, 49 Wn. App. 300, 742 P.2d 747 (1987) (same), *review denied*, 110 Wn.2d 1005 (1988); *see also Orion Corp. v. State*, 103

Wn.2d 441, 457, 693 P.2d 1369 (1985) (court will not require party to do "vain and useless" act). Instead, we read it in accordance with its obvious intent, which was to require that Ocie "make" the minor children beneficiaries for as long as they were dependent minors.

Julie's second argument starts with the proposition that the decree failed to require Ocie to make the children *irrevocable* beneficiaries. As a result, she says, he remained free to remove them from the policy at any time.

■ We reject this reasoning also. As further discussed below, it is apparent that the intent of the 1985 decree was to secure Ocie's payment of his child support obligation. "Where a life insurance policy is used as security for child support, equities arise in favor of the children that preclude the insured's right to change beneficiaries." *Standard Ins. Co. v. Schwalbe*, 110 Wn.2d 520, 523, 755 P.2d 802 (1988). Such equities arose here, and Ocie was not permitted to entirely remove his children as beneficiaries so long as his child support obligation continued.

## II

Having concluded that Estelle can make a claim against the policy, we turn now to the extent of that claim. We discuss two limitations.

## A

■ The first limitation is that Estelle cannot claim more than Ocie's half of the policy proceeds. It seems clear that when Ocie died, the Northwestern policy was his and Julie's community property. *Aetna Life Ins. Co. v. Wadsworth*, 102 Wn.2d 652, 659, 689 P.2d 46 (1984). It follows that Julie owns a one-half interest in the policy, and that Estelle cannot claim against that half.[6] *Porter v. Porter*, 107 Wn.2d 43, 726 P.2d 459, 6 A.L.R.4th 859 (1986).

---

[6]Michelle acknowledges these propositions here, though she may not have done so at the trial level. She states in her brief, "[T]he appeal court should declare that Ocie's change of the beneficiary designation of said policy was invalid and the insurance proceeds *from his half* should be awarded to his minor daughter, Michelle Sager." (Italics ours.) Brief of Appellant, at 11.

## B

■ The second limitation is that Estelle cannot claim more than unpaid past child support, plus the present value of unpaid future child support that the decree would have obligated Ocie to pay if he had not died. Life insurance is commonly required as security for child support, because it provides "a relatively painless method of protecting children from the untimely death of an obligated parent." *Bunt*, 110 Wn.2d at 380. As already noted, it is obvious that this decree intended that life insurance existing through Ocie's employment would provide security for his obligation to pay child support. Both sides stated as much in oral argument before this court. Additionally, Estelle states in her brief:

> Although the decree here does not state that the purpose of the provision requiring Ocie to "make" the children beneficiaries of his life insurance was to secure the support obligation, it is obvious that that was its purpose, and it must be so inferred.

Brief of Appellant, at 9. And Julie states in her brief:

> In this case we are forced to decide between the nonspecific language of the divorce decree which may have been intended to secure child support payments after Mr. Sager's death (even though death should extinguish the child support obligation) and Mr. Sager's clearly expressed wishes that his wife, Julie Sager, receive his Northwestern National Life policy proceeds.

Brief of Respondent, at 7. Because the intent of the decree was to secure Ocie's payment of child support, Estelle's claim is limited to the amount needed for that purpose. *Sutherland v. Sutherland*, 77 Wn.2d 6, 10, 459 P.2d 397 (1969); *In re Marriage of Donovan*, 25 Wn. App. 691, 699, 612 P.2d 387 (1980); *see Riser v. Riser*, 7 Wn. App. 647, 650, 501 P.2d 1069 (1972) (parent not required to maintain life insurance in excess of that needed as security for support).

This conclusion disposes of Julie's argument that because the decree did not require Ocie to make the children *sole* beneficiaries, he remained free to name cobeneficiaries.[7] The decree precluded Ocie from designating cobeneficiaries whose

---

[7]Brief of Respondent, at 7.

interest would infringe on the amount of insurance needed as security for child support, *Schwalbe*, 110 Wn.2d at 523, but it did not preclude him from naming cobeneficiaries whose interest would not have that effect.

### III

■ We respectfully disagree with the dissent's position that the 1985 decree entitles Estelle to collect Ocie's entire interest in the policy, and not just the amount needed to replace his child support payments. In *In re Marriage of Gimlett*, 95 Wn.2d 699, 629 P.2d 450 (1981), the Supreme Court described how to interpret an ambiguous decree of dissolution. The decree in that case provided that child support would terminate when the child became emancipated, but it failed to define emancipation. The court stated:

> Where a judgment is ambiguous, a reviewing court seeks to ascertain the intention of the court entering the original decree by using general rules of construction applicable to statutes, contracts and other writings. . . . Normally the court is limited to examining the provisions of the decree to resolve issues concerning its intended effect.

(Citations omitted.) *Gimlett*, 95 Wn.2d at 704-05. The court went on to say that "the original decree makes it obvious the original judge equated emancipation with the age of 18." 95 Wn.2d at 705.

As in *Gimlett*, the decree here is ambiguous. As Julie has correctly pointed out, it did not require Ocie to name the minor children as *sole* beneficiaries. Nor did it require that Ocie name the minor children as beneficiaries of a particular dollar amount of insurance. Thus, it might mean Ocie was required to name his children as beneficiaries to the full extent of the policy, or it might mean Ocie was required to name his children as beneficiaries to some lesser extent.

As in *Gimlett*, the intent here is obvious from the face of the decree. There was no intent to erroneously divest Ocie of rights or property that were lawfully his. *See Sutherland*, 77 Wn.2d at 10 (erroneous to award parents' property to child); *Riser*, 7 Wn. App. at 650 (same). Rather, the intent was only to provide security that would pay Ocie's child support obliga-

tion in the event he died. Effectuating this intent, we construe the decree as requiring Ocie to name his minor children as beneficiaries of his insurance only to the extent necessary to secure his child support obligation. Beyond that, he was free to name other beneficiaries, including Julie.

Although neither party cites *Puckett v. Puckett*, 41 Wn. App. 78, 82, 702 P.2d 477, *review denied*, 104 Wn.2d 1018 (1985), *overruled on other grounds in Porter v. Porter*, 107 Wn.2d 43, 53, 726 P.2d 459, 68 A.L.R.4th 859 (1986), the dissent argues that it governs this case. The Supreme Court has clearly distinguished the ownership interest of a policyholder from the expectancy interest of a beneficiary. *Wadsworth*, 102 Wn.2d at 656, 661-63. The core of *Puckett* is that the parents' divorce decree distributed the life insurance policy to the minor daughter as owner; thus, the father's later change of beneficiaries was ineffective.[8] In this case, there is no indication whatever that the dissolution court was trying to award insurance to the children as property; indeed, it would appear that the insurance was term insurance. Thus, Estelle does not claim that the 1985 decree made Michelle or her siblings the owners of a property interest in the Northwestern policy; at most, her claim is that the decree gave Michelle and her siblings an expectancy that was nondefeasible for so long as

---

[8]In *Puckett*, the decree required a father to maintain life insurance for his daughter. When the father died, he had a life insurance policy worth $187,500. The trial court ruled that the intent of the provision was to require life insurance as security for child support, and that $90,000 was needed for that purpose. Thus, it awarded the daughter $90,000, and the named beneficiary the balance. On appeal, this court rejected the argument that the decree's life insurance provision was intended to provide security for the father's child support obligation. Based on the language of the particular decree, it said the life insurance provision as "a property provision without restriction." 41 Wn. App. at 83. Citing *Sutherland*, 77 Wn.2d at 9-10, it said "the divorce court [may well have] lacked the authority to award property to the child over and above the support obligation." 41 Wn. App. at 83. However, it found that fact immaterial because the "decedent neither contested the divorce proceedings, nor appealed the default divorce decree." 41 Wn. App. at 83. Essentially, it held that the decree effected a 3-way division of the spouses' property, with the father receiving some assets, the mother receiving some assets, and the daughter receiving the life insurance policy as an asset. Because the daughter owned the life insurance policy, she was entitled to collect the entire $187,500.

they were dependent minors. *See Schwalbe*, 110 Wn.2d at 523; *Wadsworth*, 102 Wn.2d at 656, 661-63. Because a policy-holder's ownership interest has attributes different from a beneficiary's expectancy, *Puckett* has no applicability here.

Even if *Puckett* were not distinguishable, it would not support the dissent's position that Estelle should take Ocie's entire one-half of the policy. If applied here, *Puckett* would characterize the life insurance portion of the Sager decree as "a property provision without restriction". When the Sager decree was entered in 1985, there were *three* minor children. Thus, if Ocie's life insurance was awarded to them as property, each must have acquired a one-third interest, and Estelle, who now acts solely on behalf of Michelle,[9] is entitled to only one-third of Ocie's one-half.

In summary, Estelle is entitled to recover the lesser of (1) Ocie's one-half of the policy proceeds or (2) unpaid past support, plus the present value of future support that the decree would have obligated Ocie to pay if he had not died. *Donovan*, 25 Wn. App. at 699. Julie is entitled to the balance of the policy proceeds.

Reversed and remanded for further proceedings.

ALEXANDER, C.J., concurs.

PETRICH, J.[*] (concurring in part, dissenting in part) — While I agree with the majority's conclusion that the dissolution decree encumbered the insurance policy in favor of the daughter, Michelle, I disagree with its holding that the daughter's interest is limited to the lesser of the father's interest in the policy or the value of past unpaid and future child support obligations. In my view the entire interest of

---

[9]The older two children reached majority before Ocie died. They are not parties here, and Estelle does not purport to assert their interests.

[*]Judge John A. Petrich was a member of the Court of Appeals at the time oral argument was heard on this matter. He is now serving as a judge pro tempore of the court pursuant to CAR 21(c).

the deceased father in the policy should be awarded to the daughter.

As the majority points out, children as beneficiaries of an insurance policy mandated by a divorce decree have a vested equitable interest in the proceeds of the policy which cannot be divested by a later formal change of beneficiary. *Aetna Life Ins. Co. v. Bunt*, 110 Wn.2d 368, 380, 754 P.2d 993 (1988); *Standard Ins. Co. v. Schwalbe*, 110 Wn.2d 520, 523, 755 P.2d 802 (1988).

The majority, in support of its ultimate conclusion, relies on cases in which the obligated parent successfully challenged on appeal the trial court's decree requiring the parent to maintain minor children as beneficiaries of the parent's policy. Those cases hold that such decrees amount to an award of property to the children and the trial court exceeds its authority where the award is not limited in the amount or extent needed to secure or pay the parent's child support obligation. Majority opinion, at 862 (citing *Sutherland v. Sutherland*, 77 Wn.2d 6, 10, 459 P.2d 397 (1969); *In re Marriage of Donovan*, 25 Wn. App. 691, 612 P.2d 387 (1980).[10]

Here we are not dealing with an appeal from the divorce decree challenging the award of the insurance benefits. The Sager decree was never appealed. The case before us is much like the issue resolved by an opinion of this division rendered in *Puckett v. Puckett*, 41 Wn. App. 78, 702 P.2d 477, *review denied*, 104 Wn.2d 1018 (1985). In *Puckett* the decree provided for child support payments as well as requiring the father to maintain an existing Pan American Life Insurance policy for the benefit of his minor child. Prior to his death,

---

[10]*Riser v. Riser*, 7 Wn. App. 647, 501 P.2d 1069 (1972), cited by the majority, was not an appeal challenging the divorce court's authority to award property in the form of an obligation to maintain insurance benefits for minor children. At issue was the interpretation of an unappealed decree which incorporated a property settlement agreement. The court there held that the decree awarding the policies to the father, subject to the obligation to maintain the policies with the children as irrevocable beneficiaries until the children reached majority, was a provision in addition to support and maintenance requiring policy benefits to be paid without regard to any balance of support/maintenance that, but for the death of the father, would have become payable.

the father changed the beneficiary of the policy to his estate and by his will provided that the child was to receive $90,000 of the policy proceeds which then totaled $187,500. The trial court ruled that the policy was only security for the decedent's support obligation, which was satisfied by the $90,000 bequest, and that the estate was entitled to the insurance benefits. This court disagreed and awarded the entire policy benefits to the child. In support of its ruling the court there stated:

> For all purposes, the obligation to maintain the Pan American policy for Jai Ann is a property provision without restriction. The terms of the divorce decree clearly express this intent. It may well be, as decedent's estate argues, that the decedent did not intend such an outcome or that the divorce court lacked the authority to award property to the child over and above the support obligation. *Sutherland v. Sutherland, supra.* However, decedent neither contested the divorce proceedings, nor appealed the default divorce decree. We will not look behind the face of the judgment now. *Thompson v. Thompson,* 82 Wn.2d 352, 359, 510 P.2d 827 (1973); *Svatonsky v. Svatonsky,* 63 Wn.2d 902, 904, 389 P.2d 663 (1964).

*Puckett,* 41 Wn. App. at 83.

In support of its holding the majority erroneously concludes that the provision regarding insurance in the Sager decree is ambiguous and then construes the decree to have included something that may have been intended in light of limited authority of the court to award property to children but was never expressed. In so doing, the majority has misapplied the tenets governing the determination of the intent of a judicial decree.

The construction of a dissolution decree is a question of law. *Byrne v. Ackerlund,* 108 Wn.2d 445, 739 P.2d 1138 (1987). A reviewing court, charged with the task of ascertaining the intended effect of a divorce decree, is limited to examining the provision of the decree and if the decree is unambiguous it is not open to construction. *Puckett.* If the judgment is ambiguous, the court seeks to ascertain the intention of the court entering the decree guided by the general rules of construction applicable to statutes, contracts and other writings. *Callan v. Callan,* 2 Wn. App. 446, 448-49, 468 P.2d 456 (1970). An

instrument is ambiguous when its terms are uncertain or susceptible to more than one meaning. *Harding v. Warren,* 30 Wn. App. 848, 850, 639 P.2d 750 (1982).

In interpreting a statute, a court cannot read into a clear statute that which it may believe the Legislature intended but failed to express. *Automobile Drivers & Demonstrators Union Local 882 v. Department of Retirement Sys.,* 92 Wn.2d 415, 598 P.2d 379 (1979), *appeal dismissed,* 440 U.S. 1040 (1980); *Vita Food Prods., Inc. v. State,* 91 Wn.2d 132, 587 P.2d 535 (1978). The same applies to a court's interpretation of a former judgment or decree. *Callan.*

It may be that the judge intended the insurance provision to be a means of securing support obligations, but one cannot glean that from the decree itself. One thing is certain, on that score the provision is clear and unambiguous.

The decree governing the insurance provision is contained in paragraph 8, which in its entirety states:

> 8. Medical and Life Insurance: The petitioner, OCIE (NMI) SAGER, shall make the minor children of the parties . . . beneficiaries of the medical and life insurance policies which exist through his place of employment.

This provision is placed three paragraphs down from the provision for child support payments; it does not limit the amount of insurance benefits in any way, shape, or form; and neither does it limit the effectiveness of the grant to the minority of the children.

I will concede that such a provision exceeds the court's authority and if it was challenged it should have been modified, but it is not ambiguous and thus subject to the majority's construction.

In the case before us the decree expressly awards the insurance policy benefits to the children. No appeal was taken from that award. We should not look behind the face of the judgment now. I would hold that the daughter is entitled to the deceased father's entire interest in the policy.