# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | | |
|---|---|---|
| SUN LIFE ASSURANCE COMPANY OF CANADA, | | No. 48971-6-II |
| Plaintiff, | | |
| v. | | UNPUBLISHED OPINION |
| HEIDI A. LEE, | | |
| Appellant, | | |
| And | | |
| ABRIEL C. LEE, | | |
| Respondent. | | |

BJORGEN, C.J. — During the process of dissolving Ronald and Heidi Lee's marriage, Ronald violated a temporary order and final dissolution decree by naming his daughter, Abriel Lee, beneficiary of his life insurance policy.[1] Ronald died before he had fulfilled his obligations under the final dissolution decree. Heidi and Abriel separately submitted a claim to Sun Life Assurance Company of Canada (Sun Life) for the proceeds from Ronald's life insurance policy. In response, Sun Life filed an interpleader action, naming Heidi and Abriel as defendants.

---

[1] Because they share a common last name, we refer to Heidi, Abriel, and Ronald by their first names for clarity. No disrespect is intended.

Abriel offered twice to settle with Heidi early in litigation, believing the dissolution court's[2] intent was only that Ronald name Heidi as his life insurance beneficiary to ensure that Heidi was paid the maintenance and a judgment awarded to her in the final dissolution decree. Heidi rejected the settlement offers, contending that the dissolution court's intent was for her to receive the entire life insurance policy. Heidi also argued that equity, particularly under an unclean hands theory, required that she receive the entire amount of the proceeds because of Ronald's purposeful conduct in violating the temporary order and final dissolution decree.

The trial court granted summary judgment in favor of Abriel, finding that Heidi was only entitled to what Ronald still owed her under the judgment awarded in the final dissolution decree. It also sanctioned Heidi and awarded attorney fees under Jefferson County Local Rule (JCLR) 7.8, ruling that continuing litigation was frivolous from the point that Abriel first offered to settle with Heidi.

Heidi appeals these rulings, arguing that the trial court (1) erred in interpreting the dissolution decree and (2) abused its discretion (a) in making an equitable determination that Ronald's violation of the temporary order and final dissolution decree did not entitle Heidi to the entire life insurance proceeds, (b) in sanctioning Heidi for frivolous litigation and awarding attorney fees to Abriel, (c) in admitting a letter from Ronald, and (d) in admitting documentation evidencing Abriel's two settlement offers. Abriel requests attorney fees on appeal under RAP 18.1 and JCLR 7.8.

We hold that the trial court properly interpreted the dissolution decree and that no abuse of discretion occurred in its equity determination. We also hold that the trial court abused its

_____

[2] We use "dissolution court" to refer to the dissolution proceedings and "trial court" to refer to the interpleader proceedings.

discretion by awarding attorney fees to Abriel for Heidi's frivolous litigation under JCLR 7.8. Given our holdings and reasoning in this opinion, we do not address the propriety of the trial court's evidentiary rulings. Finally, we deny Abriel's request for attorney fees on appeal.

Accordingly, we affirm in part and reverse in part.

FACTS

Ronald and Heidi were married from 2001 to 2011. In March 2011, Heidi petitioned for dissolution of their marriage. A temporary dissolution order was entered, which stated in part:

> Both parties are restrained and enjoined from assigning, transferring, borrowing, lapsing, surrendering or changing entitlement of any insurance policies of either or both parties whether medical, health, life or auto insurance.

Clerk's Papers (CP) at 178-79. At the time the temporary dissolution order was entered, Ronald possessed a life insurance policy through Sun Life totaling $150,000, which named Heidi as beneficiary. In September 2013, while the temporary dissolution order was still in effect, Ronald designated his daughter, Abriel, as the sole beneficiary of his life insurance policy.

In March 2014, Heidi and Ronald proceeded to a dissolution trial in superior court. Heidi contended that Ronald should pay her $2,000 a month spousal maintenance because of their different incomes and a sum that restored her financial position to when they were first married. After arguing for these obligations, Heidi's counsel proposed the following disposition of Ronald's life insurance policy:

> Finally, in [Ronald's] financial declaration he referenced a life insurance policy. . . . We would ask that given the state of his health that he continue to – as long as he has a spousal maintenance obligation, as long as he still is paying on any judgment awarded [Heidi] that he continue to maintain that life insurance policy and continue to name [Heidi] as the beneficiary.

CP at 195.

3

After Ronald's attorney gave closing argument, the court extensively outlined Ronald and Heidi's financial obligations and property assets and predominantly agreed with Heidi's position, awarding her a $35,384 judgment and $2,000 a month in maintenance for eight months. After making these determinations, the court ruled on the life insurance policy issue:

> And [Heidi's attorney] asked that [Ronald] continue to have the life insurance on his life until the loan – until the judgment and the maintenance is paid, and I'll order that too given his health situation.

CP at 222.

Following the oral ruling, the court entered a written final dissolution decree on April 9, 2014, with the following pertinent provisions:

### I. JUDGMENT SUMMARIES

. . . .
3.7    MAINTENANCE
. . . .

> Other: The husband shall continue to name the wife as the beneficiary on his life insurance policy to secure future payment of both his spousal maintenance obligation and the judgment entered herein.

. . . .

### III. DECREE

. . . .
3.15    OTHER

> The husband shall continue to name the wife as the beneficiary of his life insurance policy until both his spousal maintenance obligation terminates and the judgment is paid in full.

CP at 91-92, 94. Ronald signed the decree despite having already changed the beneficiary of his life insurance policy to Abriel.

On April 16, 2015, Ronald died. Although he had paid all his spousal maintenance obligations, Ronald still owed $32,384 plus interest on the judgment.

On June 11 and 21, 2015, Heidi and Abriel, respectively, submitted a claim to Sun Life for the entirety of the payout under Ronald's life insurance policy. Because of the competing claims, Sun Life filed an interpleader complaint on July 27, naming Heidi and Abriel as defendants. Sun Life, Heidi, and Abriel jointly stipulated to release Sun Life from the case after it deposited the contested $150,000 life insurance benefit into the superior court's account.

On August 24, 2015, Heidi responded to the interpleader complaint, asserting a cross claim against Abriel for a declaratory judgment that Heidi was entitled to the entire $150,000 life insurance benefit. On September 10, Abriel sent a letter to Heidi offering to resolve Heidi's claim against Ronald's insurance policy for the amount still owed Heidi under the final dissolution decree. Heidi declined that offer.

On October 19, 2015, Abriel responded to the interpleader complaint and Heidi's cross claim for declaratory judgment, arguing that Heidi was entitled to $32,384 plus interest according to Ronald's obligation under the final dissolution decree, but that the remaining proceeds belonged to Abriel. Attached to Abriel's response was a typed, unsigned letter purported to be from Ronald. In the letter, Ronald directs Abriel, among other things, to pay Heidi what she is still owed under the final dissolution decree. In early November, Abriel offered to settle the case for $45,000, exceeding the amount still owed under the final dissolution decree. Heidi also rejected this offer.

On January 8, 2016, Heidi moved for summary judgment. She argued that she was entitled to all the life insurance proceeds because (1) Ronald violated the March 2011 temporary dissolution order by changing the beneficiary from Heidi to Abriel and (2) Ronald violated the April 2014 final dissolution decree when he signed it because he had not named Heidi as the beneficiary of his life insurance policy. Heidi also asked the court for an award of attorney fees

5

from Abriel "for being forced to file an action to collect on [Ronald]'s outstanding financial obligations to her." CP at 168.

Abriel submitted opposing argument, along with documentation related to the September and November settlement offers and Ronald's letter. Abriel also moved for a sanction against Heidi under JLCR 7.8,[3] which allows a court to "impose sanctions or terms for any frivolous motion." CP at 322. Heidi moved to strike Ronald's letter and the September and November settlement offers.[4]

The same judge who presided over Ronald and Heidi's dissolution trial ruled on these motions on February 5, 2016. The trial court denied Heidi's motion to strike. As to Heidi's motion for summary judgment, the trial court agreed with Abriel that under the pertinent case law, including *In re Marriage of Sager*, 71 Wn. App. 855, 863 P.2d 106 (1993), Heidi was only entitled to what Ronald still owed her under the final dissolution decree and that Ronald's violation of the temporary order and final decree did not entitle her to receive the entire life insurance proceeds.

The trial court made the following relevant observations during the oral proceeding:

[Ronald]'s dead. Contempt remedy is not available. We're not here to punish somebody. Nobody can file contempt against a dead person. . . so how does giving Heidi a windfall make any sense?
. . . .
[T]o me it's crystal, crystal clear that the reason for the insurance was to secure these obligations because Ron[ald] was ill and there was a concern about whether she would get all of her money.
. . . .
I don't think the issue at all is how much is a violation of a Court order worth? I think that's a complete mischaracterization of it. I mean, people violate this Court's

---

[3] Http://www.co.jefferson.wa.us/supcourt/PDFs/LocalCourtRules_9-1-16.pdf.

[4] Heidi also moved for sanctions under CR 11 because Abriel "intentionally included and referenced inadmissible evidence" in her response to Heidi's summary judgment motion. CP at 372. These sanctions were implicitly denied later and are not the subject of this appeal.

orders all the time. And, but, I mean, I'm not here to try to punish somebody for that who's deceased, or his surviving daughter. . . . [A]s I mentioned, this is an equitable considerable [sic]. An equitable proceeding, interpleader. But it's an equitable situation and the cases clearly give the Court discretion and to act in equity to do what's right and appropriate here.

I'm going to deny Heidi's motion for summary judgment. And, in fact, I'm going to grant -- well, I'm going to deny it and grant [Abriel's], . . . summary judgment, basically. I'll enter a judgment in favor of her.

And the way this will be . . . Heidi Lee gets the amount that she's owed.

Report of Proceedings (RP) at 16, 27-28, 32.

The court also granted Abriel's sanction motion under JCLR 7.8, awarding her attorney

fees from the point when she made the September settlement offer. The court stated:

COURT: And finally, on September 10, 2015, is when, is when I have the documented evidence that Ab[riel] was trying to settle this by paying, paying Heidi off. . . . So, from September 11th forward Heidi pays Ab[riel]'s attorney's fees and costs. And, . . . because to me I don't know why we're here.
To me this is obvious. It was for security purposes only. Heidi's asking for a complete unjustified windfall and it just amazes me. And, um, and in the meantime Ab[riel]'s had to spend beau coups bucks just to get what, in my opinion, she's entitled to. And . . . Heidi was missing nothing. She, the cash is available for her to get everything she was awarded in the divorce. And so, I mean, my decision is specific to these facts.
. . . .
[Heidi's Counsel]: The award of attorney's fees. What rule is that based upon?

COURT: . . . Local Rule 7. . . the frivolous rule. I mean . . . I'm not going to order them under CR 11. But I'll tell you, I gotta be honest, it's as close as it could be. Because, because of what I just said. I, I-- well, this case is . . . frivolous, in my mind, given Abi's offer to pay everything that Heidi was owed. So, from that point forward, in my mind, the litigation was frivolous.

RP at 33-34.

In its written order, the court entered the following pertinent findings reflecting its oral

ruling:

(3)     The undisputed material facts and settled law require that the insurance proceeds deposited with this court under this action be distributed to the

named beneficiary, Abriel C. Lee, after Heidi A. Lee receives payment for the balance Ronald E. Lee owed her under their dissolution decree when he died;

. . . .

(5) Heidi Lee's summary judgment motion and subsequent pleadings were frivolous motions in violation of [J]LCR 7.8 because the settled case law established in <u>Marriage of Sager</u>, 71 App .855, 863 P.2d 106 (1993), which involved the same issues argued by Heidi Lee in her motion, limited Heidi A. Lee's recovery from Ronald E. Lee's life insurance proceeds to the amount Abriel C. Lee offered to pay Heidi A. Lee on or before September 10, 2015.

(6) Pursuant to [J]LCR 7.8 this court exercises its discretion to impose sanctions against Heidi A. Lee for her frivolous motion and require her to pay Abriel C. Lee the costs and attorney fees she incurred in this case after September 10, 2015.

CP at 477-78.

Heidi appeals.

## ANALYSIS

### I.  STANDARD OF REVIEW

An interpleader action proceeds in two stages:  (1) determining the propriety of interpleading adverse claimants to a fund held by a disinterested stakeholder and discharging the stakeholder and (2) equitably dispensing the fund among the claimants.  *Wash. Irr. & Dev. Co. v. United States of Am.*, 110 Wn.2d 288, 297, 751 P.2d 1178 (1988).  The issues in this appeal only involve the second stage.  Because the distribution of funds in an interpleader action is a matter of equity, *id.*, we examine that issue using equitable principles.

We review de novo an order granting summary judgment.  *Nichols v. Peterson NW, Inc.*, 197 Wn. App. 491, 498, 389 P.3d 617 (2016).  If there are no genuine issues of material fact, the second stage of an interpleader action may be adjudicated on a summary judgment motion.  *Fed. Old Line Ins. Co. v. McClintick*, 18 Wn. App. 510, 516, 569 P.2d 1206 (1977).  Neither Heidi nor Abriel argues that there are any material facts disputed on appeal.  Thus, with no genuine issue

as to any material fact, we review de novo whether the trial court properly granted judgment as a matter of law. *See* CR 56(c).

## II. INTERPRETATION OF DISSOLUTION DECREE AND EQUITABLE DETERMINATION

Heidi argues that the trial court erred by awarding her only what Ronald was still obligated to pay her based on the judgment under the final dissolution decree. In approaching Heidi's argument, we examine: (1) whether the trial court appropriately interpreted the final dissolution decree; and (2) whether the trial court reasonably exercised its discretion by denying Heidi's request to receive all the life insurance proceeds as an equitable remedy for Ronald's violations of the dissolution decree.

1.    Interpretation of Final Dissolution Decree

Heidi argues that the trial court erred when it determined that the life insurance policy only secured Ronald's maintenance obligation and judgment awarded to Heidi in the final dissolution decree. We disagree with Heidi.

The interpretation of a dissolution decree is a question of law reviewed de novo. *Stokes v. Polley*, 145 Wn.2d 341, 346, 37 P.3d 1211 (2001). Washington courts apply rules of construction applicable to statutes and contracts to determine the intent of the court in entering a dissolution decree. *Id.* A decree should be construed as a whole, giving meaning and effect to each word. *Id.* If the decree is ambiguous, we may examine extrinsic evidence in interpreting it. *See In re Marriage of Smith*, 158 Wn. App. 248, 257, 241 P.3d 449 (2010).

Washington courts have had prior opportunities to examine the relationship between a dissolution decree and the designation of a beneficiary in a life insurance policy. In *Aetna Life Insurance Co. v. Bunt*, 110 Wn.2d 368, 369-70, 754 P.2d 993 (1988), the husband and first wife's children were named "irrevocable beneficiaries" in the husband's life insurance policy as

part of their dissolution decree. The husband changed the beneficiary from his children to his second wife, and he subsequently died. *Id.* at 370. The court held that the decedent-husband's designation of the second wife was "contrary to law" under the language of the decree, and thus the children were entitled to the entire proceeds from the life insurance policy. *Id.* at 377, 380-81.

Similarly, in *Standard Insurance Co. v. Schwalbe*, 110 Wn.2d 520, 522, 755 P.2d 802 (1988), the husband had a life insurance policy, naming his wife as beneficiary. The husband filed for dissolution of the marriage, and the trial court entered a preliminary injunction preventing the husband from changing the beneficiaries in his life insurance policy. *Id.* at 521-22. The stated purpose of the preliminary injunction was to protect "the best interests of the minor child(ren)" and required the husband to pay a specific amount of temporary child support. *Id.* at 521, 525 (alteration in original). In violation of the injunction, the husband added a co-beneficiary on the policy. *Id.* at 522. The husband committed suicide before a final dissolution order could be entered. *Id.* In an equitable proceeding, the trial court awarded the wife the entire life insurance proceeds, finding that the husband's violation of the injunction voided any change in the beneficiaries. *Id.*

Our Supreme Court in *Schwalbe* upheld the trial court's ruling, holding:

[T]he trial court ordered Mr. Schwalbe to pay temporary child support and entered a preliminary injunction in the nature of a security-for-support provision which enjoined Mr. Schwalbe from changing the beneficiary named in his life insurance policy. The stated purpose of the preliminary injunction was to protect "the best interests of the minor child(ren)." To give effect to Mr. Schwalbe's change of beneficiary would nullify the purpose of the trial court's order. Under these circumstances, Mrs. Schwalbe and the children obtained an equitable interest in the policy which precluded Mr. Schwalbe from changing the beneficiary during pendency of the dissolution suit.

*Id.* at 525 (citation omitted). In a footnote, the *Schwalbe* court noted that it was not reaching "whether the intended effect of the preliminary injunction was to limit the right of Mrs.

Schwalbe and her children to only those policy proceeds necessary to discharge Mr. Schwalbe's future support and maintenance obligations." *Id.* at 523, n.1.

Five years later, our court decided *Sager*, 71 Wn. App. at 857-58, where the final dissolution decree for the husband and his first wife required the husband to "make the minor children . . . beneficiaries of the . . . life insurance policies which exist through his place of employment." (Internal quotation marks omitted.) The final dissolution decree also specified the precise dollar amount that the husband would have to pay each month for each child until they reached the age of 18. *Id.* The husband remarried, removed his children as beneficiaries of the life insurance policy, named his second wife the beneficiary, and subsequently died. *See id.* at 857-58. The first wife (on behalf of her minor child) and the second wife both claimed the life insurance proceeds. *Id.* at 858.

The *Sager* court examined whether the intent underlying the divorce decree was to limit the first wife's recovery under the life insurance policy to what the husband still owed her for child support. *Id.* at 862. The court held that

> the intent here is obvious from the face of the decree. . . . [T]he intent was only to provide security that would pay [the husband]'s child support obligation in the event he died. Effectuating this intent, we construe the decree as requiring [the husband] to name his minor children as beneficiaries of his insurance only to the extent necessary to secure his child support obligation.

*Id.* at 862-63. Thus, under this theory the first wife could only claim the amount from the life insurance benefit necessary to pay the husband's remaining child support obligations to her. *See id.* at 864.

As an initial matter, Heidi appears to argue that Ronald's violation of the temporary dissolution order, as a matter of law, permitted her to recover the entire proceeds of the life insurance policy. Abriel does not contest Heidi's representation that Ronald violated the

11

temporary dissolution order by changing the beneficiary of his life insurance policy from Heidi to Abriel. Indeed, the outcome in *Schwalbe*, 110 Wn.2d at 525, suggests that Ronald's violation of the temporary order may have entitled Heidi to the entire life insurance proceeds.

However, unlike the decedent in *Schwalbe*, who died before any final dissolution order was issued, Ronald died *after* the final dissolution decree was entered. As pointed out by Abriel, Brief of Respondent at 14-15, a temporary dissolution order "[t]erminates when the final decree is entered."[5] RCW 26.09.060(10)(c); *see Lindsey v. Lindsey*, 54 Wn. App. 834, 835, 776 P.2d 172 (1989). Thus, by operation of law, the final divorce decree between Heidi and Ronald superseded the temporary order. The final decree therefore controls in determining whether Heidi is entitled to recover from the life insurance policy and, if so, in what amount.

Turning then to the controlling final dissolution decree, the pertinent provisions governing Ronald's life insurance policy read:

> 3.7 MAINTENANCE
> . . . .
>> Other: The husband shall continue to name the wife as the beneficiary on his life insurance policy to secure future payment of both his spousal maintenance obligation and the judgment entered herein.
> . . . .
>
> 3.15 OTHER
>> The husband shall continue to name the wife as the beneficiary of his life insurance policy until both his spousal maintenance obligation terminates and the judgment is paid in full.

CP at 91-92.

The meaning of these provisions is unmistakable. Provision 3.7 shows that the purpose of continuing to name Heidi as the beneficiary is "to secure" Ronald's maintenance and judgment obligations. Consistently with that purpose, provision 3.15 mandates that Heidi remain

---

[5] There are exceptions to this rule. Heidi does not argue that any apply in this case.

the beneficiary until those obligations are fulfilled. Thus, similar to the plain meaning of the final dissolution decree deduced in *Sager*, we find that the dissolution court's intent here was for Ronald to name Heidi as beneficiary to secure payment of his maintenance and judgment obligations.

Even if we assumed that the plain meaning is not clear, the extrinsic evidence removes any doubt that this was the dissolution court's intent. The oral transcript of the final dissolution trial shows that Heidi argued extensively for Ronald to pay maintenance and a judgment to her to restore her to the position she had at the time they were first married. Heidi wanted to be named beneficiary "as long as he has a spousal maintenance obligation" or "still . . . paying on any judgment" because of Ronald's declining health. CP at 195. Nothing from her argument indicated that she was claiming the entire $150,000 life insurance benefit as part of the financial and property division.

Similarly, the dissolution court discussed in detail the ramifications to both parties in awarding Heidi maintenance and a judgment. It ordered Heidi to be named beneficiary "until the judgment and the maintenance is paid" because of Ronald's health. CP at 222.[6] If the dissolution court's intent was for Heidi to receive the full benefit of Ronald's life insurance policy in the event he died, the court would have used more explicit language to effectuate this purpose. Instead, relying on Heidi's closing argument, it ordered her be named beneficiary to simply ensure that she receive her maintenance and judgment.

---

[6] In her briefing, Heidi argues that we cannot rely on the trial court's oral ruling to ascertain the intent of the final dissolution decree. However, if a decree is ambiguous, a court is permitted to turn to such extrinsic evidence to ascertain the intent of the dissolution decree. *See Smith*, 158 Wn. App. at 257.

In short, the temporary dissolution order was supplanted by the final dissolution decree, and the final dissolution decree controlled. The trial court did not err in determining that the final dissolution decree only named Heidi beneficiary to ensure that she received her maintenance and judgment. Thus, its distribution of the insurance proceeds—giving Heidi what Ronald still owed her when he died and giving Abriel the balance of funds—was fully consistent with the final dissolution decree.

2.      Reasonableness of Equitable Remedy

The next question is whether the trial court abused its discretion by not awarding Heidi, in equity, the entire benefit of the life insurance policy because of Ronald's violations of the temporary order and final dissolution decree. We find no abuse of discretion.

In matters of equity, the trial court has broad discretionary power to fashion equitable relief for parties that addresses the particular facts of each case. *See SAC Downtown Ltd. P'ship v. Kahn*, 123 Wn.2d 197, 204, 867 P.2d 605 (1994); *see also Kelsey v. Kelsey*, 179 Wn. App. 360, 369, 317 P.3d 1096 (2014). As such, we review a trial court's determination in equity for an abuse of discretion. *Cornish Coll. of the Arts v. 1000 Virginia Ltd. P'ship*, 158 Wn. App. 203, 221, 242 P.3d 1 (2010). An abuse of discretion occurs when the trial court's decision is manifestly unreasonable or is exercised on untenable grounds or for untenable reasons. *Id.*

As determined above, the dissolution court intended that Ronald name Heidi beneficiary only to secure his maintenance and judgment obligations. However, Heidi argues that because Ronald deliberately violated *both* the temporary order and final dissolution decree, she should be entitled to the entire life insurance proceeds. Further, she contends that under the unclean hands doctrine, Abriel inherited the onus of Ronald's inequitable conduct, nullifying her expectation interest in the life insurance policy.

14

As a threshold matter, Abriel argues that Heidi waived her unclean hands argument by failing to bring it to the trial court's attention. Because the trial court's decision implicitly considered many aspects of the unclean hands doctrine, we address the issue.

In general, "a party with unclean hands cannot recover in equity." *Burt v. Dep't of Corr.*, 191 Wn. App. 194, 210, 361 P.3d 283 (2015) (internal quotation marks omitted). Those who act unjustly or in bad faith are deemed to act with unclean hands. *See Miller v. Paul M. Wolff Co.*, 178 Wn. App. 957, 965, 316 P.3d 1113 (2014); *see Burt*, 191 Wn. App. at 210-11. The term "unclean hands" is "a figurative description of a class of suitors to whom a Court of Equity as a court of conscience will not even listen, because the conduct of such suitors is unconscionable, i.e. morally reprehensible as to known facts." *J. L. Cooper & Co. v. Anchor Sec. Co.*, 9 Wn.2d 45, 72, 113 P.2d 845 (1941).

Even assuming that Ronald's conduct was inequitable, his unclean hands are not somehow imputed to Abriel. By its nature, the "wrong" of inequitable conduct is that of the actor. Ronald, not Abriel, changed the beneficiary designation in violation of the temporary order and final dissolution decree. Any stain from those actions is not somehow transferred to Abriel simply by her status as a beneficiary. Thus, in its ruling the trial court correctly stated, "I'm not here to try to punish somebody for that who's deceased, or his surviving daughter." RP at 32. Heidi also takes issue with the trial court's statement that "people violate this Court's orders all the time" and argues that its decision may incentivize individuals to disregard court orders. RP at 32. In context, however, this was merely a statement to support the trial court's opinion that Abriel should not bear the adverse consequences of Ronald's acts. The statement does not call the trial court's decision into question.

Furthermore, Heidi's position was that the "worth" of Ronald's violations was the entire $150,000 from the life insurance policy. RP at 15. The trial court disagreed, stating that the usual remedy is to hold a violator in contempt and that it made no sense to punish Abriel and give Heidi a windfall. If Ronald were still alive, the court could have held him in contempt. However, it was in the trial court's discretion to determine a fair and equitable remedy based on the specific circumstances presented to it. The trial court did not want to punish Abriel, an innocent actor, for Ronald's earlier violation of a temporary order, which inflicted no tangible harm on Heidi.

Therefore, without any other equitable basis to support awarding Heidi the entire amount of the life insurance policy, we find that the trial court did not abuse its discretion in its equitable ruling.[7]

### III. THE TRIAL COURT SANCTION AWARDING ATTORNEY FEES

Heidi next argues that we should reverse the trial court's sanction awarding attorney fees to Abriel under JCLR 7.8. We agree with Heidi because her position was not frivolous.

We review a trial court's decision to impose a sanction under a court rule for an abuse of discretion. *See State ex rel. Quick-Ruben v. Verharen*, 136 Wn.2d 888, 903, 969 P.2d 64 (1998). According to JCLR 7.8, "[t]he court may impose sanctions or terms for any frivolous motion, non-appearance, or in granting a continuance of any matter." Here, the trial court imposed a sanction of attorney fees because it concluded that it was frivolous for Heidi to continue litigation after Abriel made the September settlement offer.

_____

[7] Heidi also invites us to review Ronald and Heidi's property distribution under the final dissolution decree to examine whether the trial court abused its discretion in fashioning the equitable remedy. We decline to do so. In this matter, the only relevance of the final dissolution decree was to ascertain the purpose of the life insurance beneficiary provisions.

Because the JCLRs do not contain a definition of "frivolous," we must first decipher its meaning. The interpretation of a court rule is a question of law reviewed de novo. *Marquez v. Cascade Residential Design, Inc.*, 142 Wn. App. 187, 191, 174 P.3d 151 (2007). We interpret court rules the same way we interpret statutes, using the tools of statutory construction. *State v. Otton*, 185 Wn.2d 673, 681, 374 P.3d 1108 (2016). Thus, we begin with examining the plain language of the rule. *Id.*

If a word is undefined in statute, we may use a standard dictionary definition to find the term's plain and ordinary meaning. *Audit & Adjustment Co. v. Earl*, 165 Wn. App. 497, 503, 267 P.3d 441 (2011). *Webster's Third New International Dictionary* (2002) at 913 defines "frivolous" as "of little weight or importance: having no basis in law or fact." *Black's Law Dictionary (Ninth Edition)* at 739 defines "frivolous" as "[l]acking a legal basis or legal merit; not serious; not reasonably purposeful." Under RCW 4.84.185, which is a statutory mechanism to award a party attorney fees for frivolous litigation, a frivolous action is defined as "one that cannot be supported by any rational argument [i]n the law or facts." *Clarke*, 56 Wn. App. at 131-32; *see also Dave Johnson Ins., Inc. v. Wright*, 167 Wn. App. 758, 785, 275 P.3d 339 (2012). Accordingly, we adopt these definitions for the meaning of "frivolous" in JCLR 7.8.

The trial court's specific reason for finding Heidi's continued litigation frivolous was that "the settled case law," particularly *Sager*, 71 Wn. App. 855, was clear that Heidi's recovery was limited only to what she was still owed under the final dissolution decree and Abriel's September settlement offer covered that amount. CP at 477-48. The husband-decedent in *Sager*, though, violated only a *final* dissolution decree, not a temporary order as well. Ronald violated both types. Even though we ultimately disagree with Heidi's position, there is room for rational argument that *Sager* did not preclude her position. Heidi's argument was not frivolous, and the

17

trial court thus abused its discretion in sanctioning Heidi and awarding attorney fees to Abriel on that basis.

## IV. MOTION TO STRIKE

Heidi next argues that the trial court abused its discretion in failing to strike Ronald's letter and the September and November settlement offers. However, we need not consider the arguments on the merits given our holdings and reasoning in this opinion.

Abriel offered Ronald's letter and the two settlement offers only to rebut Heidi's argument that she was entitled to attorney fees for being forced to pursue litigation against Abriel. Heidi does not argue on appeal that the trial court erred in not awarding her attorney fees and costs. Thus, the main purpose for which Abriel offered the evidence is not an issue before this court.

Further, although the trial court relied on Ronald's letter and the settlement offers to determine that Heidi had pursued frivolous litigation, we determined above that the trial court abused its discretion by awarding attorney fees to Abriel on that basis. Given our holding, Heidi is not prejudiced by these documents.[8] For these reasons, we do not further address the propriety of admitting Ronald's letter and the settlement offers.

## V. ATTORNEY FEES ON APPEAL

Finally, Abriel asks for attorney fees on appeal under JCLR 7.8 and RAP 18.1. Under RAP 18.1(a), we may award attorney fees on appeal if applicable law authorizes them. More specifically, if applicable law permits recovery of attorney fees at trial, the prevailing party may

---

[8] We also note that the trial court in part relied on Ronald's letter to determine that his violations of the orders were not purposeful. However, we assumed above that Ronald had intentionally violated the orders and had unclean hands in analyzing the reasonableness of the trial court's equitable determination.

recover fees on appeal under the same law. *See Landberg v. Carlson*, 108 Wn. App. 749, 758, 33 P.3d 406 (2001). However, we decline Abriel's request for attorney fees because, as already determined in Part III, *Sager* and the other seminal cases did not involve a situation where the decedent violated two dissolution orders. Thus, Heidi had at least a reasonable argument that she was entitled to more than what Ronald owed her under the final dissolution decree.

CONCLUSION

We affirm the trial court's distribution of the life insurance proceeds, but reverse its sanction awarding attorney fees to Abriel. We decline Abriel's request for attorney fees on appeal.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

BJORGEN, C.J.

We concur:

LEE, J.

MELNICK, J.